**In re NBI, INC., a Delaware corporation, Debtor.**

**Bankruptcy No. 91–11517 DEC.**

United States Bankruptcy Court, D. Colorado.

June 19, 1991.

Jeffrey Krause, Stutman, Treister & Glatt, Professional Corp., Los Angeles, Cal., Margaret Toal–Rossi, Ireland, Stapleton, Pryor & Pascoe, P.C., Denver, Colo., for debtor.

David Fried, U.S. Trustee, Denver, Colo.

Robert Planchard, Denver, Colo., for Unsecured Creditors Committee.

## MEMORANDUM OPINION AND ORDER ON DEBTOR'S MOTIONS TO AUTHORIZE EMPLOYMENT OF CHAPTER 11 COUNSEL

DONALD E. CORDOVA, Bankruptcy Judge.

THIS MATTER COMES before the Court on two motions filed by NBI, Inc. ("NBI"), seeking Court authorization to employ counsel to represent NBI in their Chapter 11 case, filed on February 6, 1991.

NBI requests authority to employ the Denver law firm of Ireland, Stapleton, Pryor & Pascoe ("I & S") as general corporate and local bankruptcy counsel (the "I & S Motion"). NBI also seeks to employ the Los Angeles firm of Stutman, Treister & Glatt ("ST & G") as special insolvency counsel (the "ST & G Motion"). Both the Court-appointed Creditors Committee ("Committee"), and the United States Trustee ("Trustee"), lodged objections to the pending motions.

Neither the Trustee nor the Committee challenged NBI's employment of I & S or ST & G as co-counsel in this case; they did, however, object to characterization and treatment of the substantial pre-petition retainers paid by NBI to both firms as nonrefundable, minimum fee retainers, "earned on receipt".

In the interim pending hearing on this matter, the Committee withdrew their objection based on clarification by NBI counsel that the retainers paid by NBI remained subject to potential disgorgement in accordance with 11 U.S.C. Section 329(b). Counsel conceded that the retainers, notwithstanding contractual definition to the contrary, were potentially refundable if ultimately deemed excessive in relation to the value of actual legal services provided in this Chapter 11 case. This concession was not enough to satisfy the Trustee's concerns.

In response to the Trustee's outstanding objection, NBI's proposed counsel cogently presented their arguments in support of the pending motions at the scheduled March 21, 1991 hearing before this Court. The Trustee also argued persuasively in

opposition to the nature and import of the retainers at issue. In addition, the parties had previously submitted legal memoranda outlining the authority in support of their respective positions.

The Court has reviewed the file in this matter, and has considered the argument and authority offered by the parties. Being advised in the premises thereof, the Court authorizes NBI's employment of proposed counsel Ireland, Stapleton, Pryor & Pascoe and of Stutman, Treister & Glatt in accordance with the following memorandum opinion and order.

## BACKGROUND

■ From all indications on the record to date, the NBI bankruptcy case will rank among the larger and more complex Chapter 11 cases filed in the District of Colorado in the past several years. NBI operates thirteen service branches throughout the country as part of its computer networking and software development and servicing enterprise. The company is party to hundreds of contracts and leases. Its stock is traded on the New York Stock Exchange; holders of the company's debt securities and common stock number in the thousands. Its secured and unsecured creditors include taxing authorities, trade vendors, customers, and lessors in numerous states. The company has several hundred employees. NBI's Chapter 11 schedules reflect liabilities estimated at nearly $75,000,000. The bankruptcy estate apparently includes assets with a potential value of corresponding magnitude.

The docket in this case reflects a combination of nearly one hundred pleadings, notices, and orders entered in the first month after NBI's Chapter 11 petition was filed. Most of the matters addressed to date concern, directly and indirectly, large numbers of interested parties. An official unsecured creditors' committee has been appointed.

NBI has filed a number of applications for Court approval of various professionals' employment. These professionals include accountants, financial analysts, and special tax counsel. They include the attorneys proposed by NBI in the pending motions as Chapter 11 co-counsel.

NBI has selected two apparently well qualified law firms to represent them in their reorganization efforts. Ireland & Stapleton, a local firm, has a long history with NBI. Accordingly, I & S presumably has substantial familiarity with the company's affairs and is in a unique position to effectively and efficiently advise NBI on corporate matters related to the company's Chapter 11 case. Stutman, Treister & Glatt is a Los Angeles firm with considerable experience in providing the kind of bankruptcy representation generally required in cases similar in scope to NBI's. ST & G has previously represented debtors in such cases in the District of Colorado. NBI sought out ST & G's expertise nearly a year ago when faced with the prospect of bankruptcy. ST & G has apparently worked with NBI since that time in attempting to resolve differences with parties threatening involuntary bankruptcy action. Accordingly, in addition to their bankruptcy expertise, ST & G also has a degree of familiarity with NBI's pre-petition affairs undoubtedly invaluable in assisting NBI through the reorganization process.

Under the circumstances, NBI's selection of I & S and ST & G to represent the company as Chapter 11 co-counsel appears to be a reasonable choice. The terms and conditions of that representation, however, raise questions which cannot be ignored in the context of a case under the Bankruptcy Code.

## TERMS OF PROPOSED EMPLOYMENT [1]

*The I & S Agreement.* On February 6, 1991, concurrently with the filing of its Chapter 11 petition, NBI filed the I & S

---

**1.** Copies of the written employment agreements between NBI and counsel have not been tendered to the Court. The Court therefore relies on counsel's representations concerning the significant provisions of said agreements as accurate and complete, and in accord with counsel's disclosure obligations under the Bankruptcy Code and Rules as well as counsel's ethical obligations and duty of candor as officers of the court.

Motion. The Motion generally discloses the scope and nature of professional services to be provided by I & S. It also alleges the requisite disinterestedness of the firm, and asserts that the best interest of the estate is served by such employment.

Paragraph 5 of the I & S Motion specifically discloses the firm's receipt of a $200,000 retainer "for services to be rendered to [NBI] in this Chapter 11 case." Paragraph 5 further notes that "[t]he Firm and applicant have agreed that the retainer was fully earned on receipt in exchange for the Firm's commitment to represent Applicant in this Chapter 11 case and the corresponding preclusion of the Firm from other employment." Paragraph 5 goes on to list a number of factors in reaching this agreement, all of which generally appear to be legitimate considerations.

The I & S Motion is supported by the affidavit of John G. Lewis, a member of I & S. Mr. Lewis attests to the firm's continuing representation of NBI in general corporate matters and as outside general counsel since 1975.

The I & S Motion is also accompanied by the I & S Statement Pursuant to Section 329(a) and Bankruptcy Rule 2016(b) ("I & S Statement"). The I & S Statement discloses the firm's receipt of $832,554 in fees and costs for advice and legal services rendered in connection with various NBI matters in the year preceding the Chapter 11 filing. The Statement was subsequently amended to reflect a decrease in the amount paid for pre-petition services by $200,000. This apparently corresponds to the I & S retainer.

*The ST & G Agreement.* NBI also filed the ST & G Motion contemporaneously with the filing of its Chapter 11 petition. Like the I & S Motion, the ST & G Motion was accompanied by a firm member's affidavit and a statement complying with Section 329(a) and Bankruptcy Rule 2016(b) (the "ST & G Statement").

The ST & G Statement discloses pre-petition payments from NBI in the year preceding the Chapter 11 filing totalling $728,431.49. This total is described as payment for "... fees and reimbursement of costs for advice and legal services and as a retainer for legal services to be rendered as special insolvency counsel to the Debtor and Debtor-in-Possession in this Chapter 11 case ...". The ST & G Statement also discloses that, in addition to this total amount, "... Debtor agreed to pay the Firm any additional amount required by the Firm as would reasonably compensate it for services rendered in addition to that calculated at the Firm's standard hourly guideline rates ... based upon such other factors as the results achieved, the difficulties encountered, the complexities involved, the contingent nature of the Firm's compensation and such other appropriate facts as Courts consider."

Although not explicit in the ST & G Statement, paragraph 4 of the ST & G Motion clarifies that $264,984.24 of the total $726,431.49 received by ST & G from NBI was for services rendered in the year preceding the petition date through December 31, 1990. The remaining $463,447.25 was received as an earned retainer for services to be rendered in this Chapter 11 case, less the amount attributable to services rendered and costs incurred by the Firm from January 1, 1991 to the petition date. Additional language in paragraph 4 of the ST & G Motion is identical to that in the I & S Motion concerning the "fully earned on receipt" treatment of the retainer. ST & G acknowledges that they placed the retainer funds in one or more of the firm's general accounts rather than holding the funds in a trust account. ST & G does, however, render a periodic accounting of post-petition services to NBI which reflects "credits" against the firm's fees for post-petition services based on the amount of the retainer received.

Paragraph 5 of the ST & G Motion additionally notes that ST & G agreed with NBI "... to accept as compensation for its services its retainer and such additional sums as may be allowed by this Court in accordance with law...." ST & G represents that the firm is irrevocably committed to continue its representation of NBI even is such additional sums are unavailable on an interim basis. ST & G does not, however,

disclaim the right to seek payment of such sums from the estate. The firm explicitly acknowledges their intention to do so, on an interim basis if appropriate, as soon as NBI "credits" attributable to the ST & G retainer are exhausted.

Notice of both the I & S and ST & G Motions, corresponding affidavits and Section 329(a) statements was issued by NBI at the Court's direction.

### ISSUES

The Trustee does not object to NBI's employment of I & S or ST & G. The Trustee does not object to payment of retainers to either firm. The Trustee generally does not object to the amount of the retainers paid. The issues raised by the Trustee's objection, and those addressed by the parties at hearing concern, among others: 1) the ownership status of the more than $600,000 at issue notwithstanding the parties' characterization and treatment of these funds as retainers "fully earned on receipt"; 2) whether such retainers must be placed in trust accounts pending counsel's provision of actual legal services; and, 3) whether such retainers may be applied by counsel to fees and costs for post-petition services and expenditures only upon prior Court approval of appropriately noticed fee applications. Each of these issues is significant here in relation to the critical question at issue: whether pre-petition minimum fee retainers for bankruptcy representation, contractually deemed by a debtor and prospective counsel to be "earned on receipt", are reasonable in a Chapter 11 case.

### DISCUSSION

### I.

*Pertinent Provisions of the Bankruptcy Code and Rules*

Sections 327 through 331 of the Bankruptcy Code, complemented by Bankruptcy Rules 2014, 2016, and 2017, provide the framework applicable to employment and compensation of Chapter 11 counsel.

In addressing the question to be decided in this matter, the Court is faced with two distinct yet related categories of issues under these provisions of the Bankruptcy Code and Rules. The first concerns whether the proposed employment is in the best interest of the estate. It demands consideration of counsel's disinterestedness, which is generally not at issue here. It also requires examination of whether the terms and conditions agreed to by the parties pre-petition as the basis for employment of counsel in this Chapter 11 case, and as submitted to this Court for approval, are reasonable. The second concerns the procedural and substantive requirements for actual compensation of professionals who are authorized by the Court to provide post-petition services on behalf of the estate. By the very nature of these two sets of issues, the first is necessarily decided as a preliminary matter or the second is irrelevant.

The Bankruptcy Code provisions most pertinent to the matter at issue in this case are Sections 327 and 328, which govern employment of professionals and the terms and conditions of such employment in a Chapter 11 case. *See* 11 U.S.C. Sections 327, 328. Section 327 authorizes the trustee, subject to certain conditions and only upon prior court approval, to employ attorneys to represent the estate. It provides that only disinterested persons who do not hold or represent an interest adverse to the estate qualify for employment. Section 328(a) generally authorizes the Court to approve terms and conditions of professional employment under Section 327 that are reasonable. If circumstances later prove the Court's determination of the reasonableness of these terms to be mistaken, Section 328(a) also permits the Court to remedy the situation. Bankruptcy Rule 2014 outlines the procedures which enable the Court to implement Sections 327 and 328(a).

Bankruptcy Code Section 329 is also pertinent in the Court's consideration of the employment of Chapter 11 counsel. *See* 11 U.S.C. Section 329. Section 329(a) and related Bankruptcy Rule 2016(b) require *any* attorney representing a debtor in a case under title 11, or in connection with such a

case, to disclose to the Court any compensation paid or agreed to be paid for such representation. The triggering criteria under Section 329 is that such payment or agreement was made within one year prior to the bankruptcy filing. Section 329(a) specifically requires that the source of any such compensation be disclosed as well. Bankruptcy Rule 2016(b) clarifies that disclosure is mandatory whether or not the attorney applies for payment of compensation from the estate. Bankruptcy Rule 2017 provides the procedural mechanism for examining such transactions, and, in conjunction with Section 329(b), allows the Court to address compensation deemed excessive. Both Sections 329(a) and 329(b) enable the Court to scrutinize a Chapter 11 debtor's pre-petition transactions with counsel for signs of overreaching which either affect counsel's disinterestedness in the case or otherwise prejudice the rights of the debtor, now debtor-in-possession, or the Chapter 11 estate. They also permit the Court to remedy certain excesses that are amenable to correction so that proposed employment of counsel which is otherwise appropriate under Sections 327 and 328 can be authorized.

A second set of rules come into play once employment of Chapter 11 counsel is authorized by the Court. *See* 11 U.S.C. Sections 330, 331. These Code provisions, together with Bankruptcy Rule 2016(a), govern the Court's award of compensation for services rendered and reimbursement of costs and expenses incurred by counsel in representing a Chapter 11 debtor.

Section 330 authorizes compensation for services and reimbursement of expenses and also prescribes the standards on which the amount of such award by the Court is to be determined. Compensation is limited to payment for only actual and necessary services rendered. It must be reasonable in amount. Reasonableness for this purpose is typically evaluated in relation to the time, nature, extent, and value of services

rendered, and, within appropriate limits, to the cost of comparable services outside the bankruptcy context.

Section 331 explicitly authorizes Court approval of compensation and reimbursement under Section 330 on an interim basis. Compensation pursuant to Section 331 generally may be awarded at 120 day intervals. The Court also has discretion under Section 331 to vary from this general rule if circumstances warrant. The bankruptcy courts in this district and elsewhere have utilized this discretion in appropriate cases. *See, e.g., In re Frontier Airlines, Inc.*, 74 B.R. 973 (Bankr.D.Colo.1987); *In re Kaiser Steel Corporation*, 74 B.R. 885 (Bankr. D.Colo.1987).[2]

Bankruptcy Rule 2016(a) prescribes the requirements for allowance of professional compensation on either a final or interim basis. In addition to formal fee applications, compensation awards under both Section 330 and Section 331 are specifically conditioned on notice to any parties in interest and to the United States Trustee. The requisite notice is generally governed by Bankruptcy Rule 2002(a)(7).[3]

## II.

### *Summary of Arguments*

Counsel for NBI contend that the terms of compensation agreed to by NBI and counsel prior to NBI's Chapter 11 filing, including the "earned retainers" specifically at issue, should be approved by this Court. They urge the Court to recognize such retainers as reasonable based on: 1) the express language of Section 328(a) and the provisions of related Code sections 329, 330, and 331; 2) the fact that no provision of the Code or pertinent Rules explicitly prohibits such arrangements; and, 3) their purported consistency with the overriding principles and policies of the Code concerning non-discriminatory compensation of bankruptcy counsel.

**2.** While the instant matter was pending, the Court entered a special procedural order concerning interim compensation in this case in response to a motion filed by the Committee. *See* April 24, 1991 Order Establishing Interim

Fee and Expense Reimbursement Application Procedure.

**3.** In this case, special notice provisions apply pursuant to Court Order dated February 7, 1991.

Counsel's arguments are premised on both legal grounds and policy considerations. They rely, in large part, on interpretation of both the substance of, and relationship between, state law and bankruptcy principles. Counsel focus on two concepts: freedom of contract under state law, and property of the estate under Section 541 of the Bankruptcy Code.

Counsel urge this Court to respect the parties' contractual freedom under state law to bargain for and settle on terms of employment as they see fit, essentially because the terms they have agreed upon are expressly prohibited by neither applicable state law nor bankruptcy law. Counsel argue that denying them such freedom in this case is contrary to bankruptcy policy because it deprives them of compensation opportunities allowed non-bankruptcy practitioners.

Counsel argue that requiring fee applications with respect to the already "earned" retainers here is not expressly mandated under the Code and Rules and therefore imposes unnecessary administrative burdens on the Court. Counsel contend that such purportedly unnecessary fee applications yield no demonstrable benefit to NBI or the estate and its creditors, as all parties in interest are still provided with adequate opportunity to examine whether the retainers are in fact excessive in amount and subject to refund or disgorgement pursuant to Section 329(b). They insist, however, that Section 329(b) is applicable only upon conclusion of counsel's Chapter 11 representation, and, furthermore, is the sole avenue available to examine the retainers' reasonableness.

Lastly, counsel argue that mandating deposit of counsel's retainers in trust is not only unnecessary since the retainers purportedly are not property of the estate, but necessarily creates a conflict between debtor and counsel. They maintain that this conflict taints counsel's disinterestedness under Section 327 and jeopardizes their ability to be employed as Chapter 11 counsel.

The Trustee's response to these various arguments is straightforward. The Trustee challenges counsel's interpretation of state law and bankruptcy principles concerning retainer agreements as: 1) inapplicable in the majority of jurisdictions; 2) contrary to the Bankruptcy Code and Rules; 3) inconsistent with the disciplinary rules governing attorneys' treatment of client funds; and, 4) at odds with the policies inherent in the provisions of Title 11 concerning professional compensation.

### III.

### *Applicable Law and Analysis*

■ Counsel's arguments focus on a rationale and analysis currently in vogue in bankruptcy circles, particularly with debtors' counsel. They address what may well prove to be the new standard for pre-petition retainers, at least in those jurisdictions where two factors apparently prevail: 1) applicable state contract law and disciplinary rules recognize the potential for attorney retainers generally to be "earned on receipt" if an attorney and client so intend; and, 2) bankruptcy courts are willing to focus solely on the concept of freedom of contract as it generally relates to the definition of "property of the estate", without consideration of the special factors and considerations under the Bankruptcy Code and Rules which govern the relationship between debtors and debtors' counsel in a bankruptcy case. Neither of these factors pertain in the District of Colorado, and this Court is neither compelled nor persuaded to adopt the standard proposed by counsel as applicable in this case.

The fundamental issue before this Court remains not whether "earned retainers" are permissible under state law, but whether they are reasonable in the bankruptcy context. Reasonableness for this purpose is not defined exclusively by state law, but primarily by bankruptcy law.

The burden to establish that proposed terms and conditions of professional employment proposed in a bankruptcy case are reasonable is on the moving party. As noted by Judge Klein in *In re C & P Auto Transport, Inc.*, 94 B.R. 682, at 686 (Bankr.E.D.Calif.1988):

The court must be persuaded that the terms and conditions of employment are in the interest of the estate. The decision is a matter of discretion and is made against the background of the statutory compensation scheme of sections 330 and 331, which scheme is, as a matter of law, reasonable. Lingering doubts are appropriately resolved by falling back on those provisions.

NBI and counsel have not sustained their burden with respect to the "earned retainers" issue. The arguments and authority they advance do not persuade this Court that the compensation arrangement submitted for approval is reasonable within the context of 11 U.S.C. Section 328(a). The retainers received by ST & G and I & S are clearly excessive in nature for bankruptcy purposes.

There is apparently no authority in this jurisdiction which specifically addresses the issue of whether purportedly "earned retainers" or "advance payments" to be "credited" against future legal services are reasonable in a bankruptcy case.[4] It has nonetheless been the policy and practice in the bankruptcy courts in this district to require retainers applicable to fees and costs for post-petition representation to be held in a trust account, and drawn against only pursuant to appropriate court order. *See, e.g., In re Woodland Towns Investment Company*, Case No. 87 B 06171 M

(May 15, 1989 Order), in which Judge Brooks relies in part on *In re C & P Auto Transport, Inc.*, supra, 94 B.R. 682, and *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569 (Bankr.N.D.Tex.1986). The Court finds no cause to depart from this standard here.

A recent series of decisions by the Colorado Supreme Court in attorney disciplinary proceedings under Colorado's Code of Professional Responsibility[5] reinforces the validity of such requirement in bankruptcy cases in this district. Each decision concerns the refundability of fees paid by clients as retainers or advances which were not earned by provision of the services promised, an issue parallel to that under Section 329(b) of the Bankruptcy Code. Each decision relies, in part, on DR 9–102(B) as the basis for discipline, implicitly acknowledging that client funds, required to be held in trust under DR 9–102,[6] were at issue. *See People v. Gregory*, 797 P.2d 42 (Colo.1990) (violation of ethical duty to pay over client funds under DR 2–110(A)(3) and DR 9–102(B)(4) where attorney failed to refund advance fee that had not been earned because promised services not provided); *People v. Nichols*, 796 P.2d 966 (Colo.1990) (attorney obligated pursuant to DR 9–102(B) to return funds in his possession upon request of client entitled to refund of unearned retainer); *People v. Coca*, 716 P.2d 1073 (Colo.1986) (attorney

---

**4.** The Tenth Circuit has recently addressed the issue of contract damages under a bankruptcy court approved, hybrid retainer/contingency fee agreement which the debtor rejected pursuant to Code Section 365. In this case, the Tenth Circuit determined that contract damages were to be determined in accordance with the terms intended and agreed to by the parties, and damages gauged by standards under pertinent state contract law. The court rejected the bankruptcy court's damages determination based on equitable factors under bankruptcy law. They did so, however, because the bankruptcy court had already determined the contract terms at issue to be reasonable, and there was no indication that unanticipated developments of the kind contemplated in Section 328(a) justified deviation from the contract's terms. *See In re Western Real Estate Fund, Inc.*, 922 F.2d 592 (10th Cir.1991). This decision has little, if any, factual or legal relevance to the question immediately at issue here.

**5.** Counsel who practice before the bankruptcy courts in this jurisdiction are subject to the Local Rules of Practice for the United States District Court for the District of Colorado. By the terms of these rules, the Code of Professional Responsibility adopted by the Supreme Court of Colorado (as amended) applies to all attorneys appearing before the District Court. See Local Rules 300, 302; Appendix A.

**6.** DR 9–102 is entitled "Preserving Identity of Funds and Property of Client." Subpart (A) of this rule provides in pertinent part that:

All funds of clients paid to a lawyer or law firm shall be deposited into one or more identifiable interest-bearing insured depository accounts maintained in the state where the law office is situated.

Subpart (A)(2) states in part that:

Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein.

who "spent" retainer because he assumed it would be his fee and was then unable to repay it violates DR 9–102(B)). *See also People v. Franks,* 791 P.2d 1 (Colo.1990), (unearned portion of partially non-refundable retainer must be returned upon client request based on DR 9–102(B)(4), which the court notes parallels ABA Model Rule of Prof. Conduct, Rule 1.15).

The Model Rules referenced in the *Franks* decision, and currently pending adoption in Colorado in modified form,[7] rely on identification of money or property potentially refundable to a client, *i.e.,* as "property of the client," as the basis for distinguishing trust funds from non-trust funds. *See ABA/BNA Lawyers' Manual on Professional Conduct,* No. 21, 45:104 at pp. 18–19 (ABA/The Bureau of National Affairs, Inc.1991). A similar analysis is apparently applied in other jurisdictions under corresponding rules. *See, e.g., In re Montgomery Drilling Co.,* 121 B.R. 32, 38–39 (Bankr.E.D.Calif.1990) (funds advanced as security retain ownership identity with client until earned, based on former Cali-

fornia DR 8–101); *In re C & P Auto Transport, supra.*

Notwithstanding the clear import of these decisions in Colorado and elsewhere, counsel rely primarily on the relatively recent bankruptcy court decision, *In re McDonald Bros. Construction, Inc.,* 114 B.R. 989 (Bankr.N.D.Ill.1990), as indicative that "earned retainers" are not prohibited in this bankruptcy case. Counsel contend that two even more recent bankruptcy court orders in the Central District of California provide additional supporting authority.[8] Counsel also suggest that there is local precedent which favors their position.[9]

The rationale and analysis in *McDonald* provides no grounds for sanctioning "earned retainers" in the context of Section 328(a). The *McDonald* decision never specifically addresses the issue of whether such retainers are reasonable by bankruptcy standards. The only bankruptcy issue squarely before the court in *McDonald* was whether the Code's fee application requirements applied to the retainers at issue.[10] The court in *McDonald* at best

7. Colorado's version of the Model Rules is currently subject to comment and hearing. The Colorado Committee responsible for drafting these rules also played a major role in formulating the ABA Model Rules. *See The Colorado Lawyer,* Vol. 20, No. 4 pp. 639–689 (April 1991).

8. ST & G affidavits refer to decisions by Judge Ahart and Judge Dooley approving compensation of ST & G as counsel in two different Chapter 11 cases on the same terms and conditions as proposed here, notwithstanding trustee objections similar to those raised in this case. While neither judge appears to have issued a written opinion in support of his order, counsel maintain that the orders discredit *In re Hathaway Ranch Partnership,* 116 B.R. 208 (Bankr.C.D.Calif.1990), one of the principal cases supporting the Trustee's arguments. The bankruptcy courts in California apparently do not share counsel's assessment of the significance of these orders. *See In re Mortgage & Realty Trust,* 123 B.R. 626, 630 (Bankr.C.D.Calif.1991).

9. Judge Gueck, one of this district's former bankruptcy judges, was the presiding judge in the case of *In re Storage Technology Corporation,* Case No. 84 B 5377 G, a large and complicated Chapter 11 case filed in the District of Colorado in October 1984. ST & G served as bankruptcy co-counsel to the debtor-in-possession.

This Court has reviewed the pleadings in that matter related to approval of ST & G employment, including the ST & G Section 329 disclosure statement and the Court's order authorizing the firm's employment. The Court finds nothing in these documents which indicates full and candid disclosure of the retainer ST & G received in that case as "earned on receipt". There is nothing in the court's order, apparently a form of order prepared by counsel, which indicates that Judge Gueck was advised in any way of the true nature of the retainer received or how it was to be accounted for.

10. In addressing this issue, the court in *McDonald* focuses on whether various types of retainer agreements are recognized and enforceable solely as a matter of state law. The decision provides an interesting analysis of historical and current practices concerning attorney retainers, looks to applicable Illinois law on the subject, determines that monies paid by a debtor to counsel pre-petition under certain types of retainer agreements do not constitute property of the estate, and concludes that application of such retainers to payment of the estate's legal fees and expenses *is therefore not subject to* the fee application requirements for attorney compensation under the Bankruptcy Code.

While a number of courts have utilized a similar type of analysis in addressing approval of retainer agreements under Code Section

makes certain implicit assumptions about reasonableness. The first is that the reasonableness of a contractual agreement between debtor and counsel is necessarily governed by exactly the same factors under bankruptcy law as those applicable under state law to other types of attorney-client relationships. The second is that a prospective debtor and their counsel of choice may, by pre-petition contract alone, remove funds paid as a retainer for post-petition representation from the scope of Section 541 of the Code and, in doing so, negate the necessity for formal fee applications with respect to those funds and preclude the Court's interim assessment of whether the funds are being reasonably expended prior to a final accounting. This Court agrees with neither assumption.

■ Inclusion of the term "retainer" in Section 328(a) of the Bankruptcy Code does not by definition qualify all retainer arrangements as reasonable. The Court, in its discretion, must make this determination. *In re C & P Auto Transport, supra; In re Leff,* 88 B.R. 105 (Bankr.N.D.Tex. 1988).

■ Counsel emphasize the reasonableness of the retainers here exclusively in quantitative terms. They contend that the only pertinent issue to consider is whether the retainer is excessive in amount in relation to the consideration provided by counsel, and that excessiveness is and can be properly addressed only at the conclusion of their representation of NBI. They claim that both contentions are consistent with Section 329(b). This Court reads no such limitations in Section 329. On the contrary, the requirement that counsel submit their Section 329 disclosures within fifteen days of the filing of the petition in a bankruptcy case suggests review of debtor's pre-petition transactions with counsel is appropriate at the inception of the case, not its end. *See In re AUTOMEND, Inc.,* 85 B.R. 173 (Bankr.N.D.Ga.1988). Counsel also ignore the fact that reasonableness and excessiveness are both not only quanti-

tative, but qualitative in nature. *Cf. In re Mortgage & Realty Trust, supra.* Nothing in the language of either Section 328 or Section 329 confines the factors to be considered under these provisions to strictly quantitative ones. Clearly, these provisions recognize that counsel may bargain for too much from a prospective debtor in more ways than one. They protect against the danger that a prospective debtor, willing to do whatever necessary to secure the counsel of its choice, may bargain away more than is reasonable in the context of a subsequent bankruptcy case, unknowingly or otherwise. *See generally In re Senior G & A Operating Company,* 97 B.R. 307 (Bankr.W.D.La.1989). The complexity of a prospective debtor's financial affairs and the business sophistication incident thereto may well render such a debtor more vulnerable, not less, to making concessions deemed essential to obtain counsel sufficiently qualified to manage and complete a successful reorganization.

An "earned retainer", whatever its amount, is inherently unreasonable in the context of Section 328(a). The concept of an "earned retainer" is simply an anomaly in a Chapter 11 case. This fact has been implicitly recognized in each of those bankruptcy court decisions to date which decline to elevate the form of a contract over the substantive provisions of the Code or to ignore those provisions in favor of expediency. In this Court's view, *In re C & P Auto Transport, supra,* and *In re Hathaway Ranch Partnership, supra,* reflect an assessment of the issues pertinent here which is consistent with both the spirit and the letter of applicable law.

"Earned retainers" are unreasonable in a bankruptcy case because they impermissibly circumvent the explicit and implicit requirements of the Bankruptcy Code and Rules pertaining to compensation of professionals, particularly debtor's counsel. The Code provides for such compensation only for *actual and necessary* legal services and related costs. Absent specific authori-

---

328(a), these courts have reached a different conclusion than the *McDonald* court with respect to essentially the same type of retainers

and facts as in this case. *See, e.g., In re Montgomery Drilling, supra; In re Burnside Steel and Foundary Co.,* 90 B.R. 942 (Bankr.N.D.Ill.1988).

zation by the court, such compensation is allowed only *after* such services have been provided and such costs incurred, not before. *See In re Orthopaedic Technology*, 97 B.R. 596, 601 (Bankr.D.Colo.1989).[11]

■ "Earned retainers" are unreasonable in bankruptcy because they effectively nullify the protections afforded the estate and its creditors by the Code and Rules. Parties in interest and the Court have the right, if not the duty, to monitor the conduct of the case and related expenditures which have potential impact on the assets of the estate. *Cf. In re Land*, 116 B.R. 798, 803–806 (D.Colo.1990). Parties in interest are entitled to notice and an opportunity to be heard on matters which affect them in advance, not after the fact.[12]

■ "Earned retainers" also allow debtor and counsel to impermissibly usurp the Court's authority under the Code and Rules. They purport to substitute the discretion of counsel and debtor for that of the Court. The administrative convenience urged by counsel as justification for allowing "earned retainers" without prior fee applications does not absolve the Court of its statutory obligations. *See In re Montgomery Drilling, supra; In re Westfall*, 73 B.R. 186 (Bankr.W.D.Ark.1986).

■ Counsel's arguments concerning discrimination and disqualifying conflicts if the Court rejects the retainers here as "earned" are more fiction than fact. The only potential conflicts at issue are those created by the parties themselves, the only discrimination a reverse discrimination prejudicial to the estate.

Refusing to acknowledge the retainers here as "earned" pre-petition because counsel and NBI have defined them as such is not unduly discriminatory to counsel. Counsel present no evidence that such practice is commonplace within or outside the bankruptcy bar, only that ST & G routinely negotiates for such terms and has had some limited success to date in persuading bankruptcy judges to approve their proposals. This Court is not so persuaded, nor, apparently, is ST & G when representing creditors rather than debtors. *See, e.g., In re Mortgage & Realty Trust, supra.*

Counsel claim to have bargained with NBI at arms length. They considered numerous factors in agreeing to provide representation, most of which translate not only into a heavy workload and commitment of time, energy, and firm resources, but into significant revenues for their firms over what may be an extended period of time. The retainers counsel requested from NBI are substantial in amount. They effectively guarantee prompt payment of counsel's likely fees and costs in the initial stages of this case if appropriate interim application for such payment is made. Counsel command a hefty hourly "guideline" fee and, apparently, contemplate an optional premium over and above these rates entirely at counsel's discretion. They anticipate a potential bonus at the conclusion of this case. Counsel, having some familiarity with NBI's financial situation, undoubtedly assessed the company's future prospects and decided that any risk of nonpayment in the future was insignificant in

---

**11.** The *McDonald* decision goes to great lengths in describing and distinguishing various types of retainers. While the court in *McDonald* apparently concludes otherwise, this Court questions whether any retainer deemed by the parties to be earned in advance of legal services, even the historically "classic retainer" paid in exchange solely for an attorney's promise of future availability and the necessary incidents to maintaining such availability, is ever a viable means of compensating counsel for a debtor-in-possession. Attorney compensation in a bankruptcy case is premised on performance of legal services which benefit the estate, not on mere availability for such purpose or promises to perform such services if necessary in the future.

**12.** Review of the manner in which counsel's retainer was credited, only at the conclusion of their representation in this case, and purportedly as the sole means available to parties in interest to examine the reasonableness of counsel's accounting for their retainers, does not provide the protection of these parties' interests as contemplated by the Code and Rules. *See In re Kaiser Steel Corp., supra,* 74 B.R. at 887–88.

In a case like NBI's, substantial activity is occurring in the very early stages of the case. Lack of accounting to the Court and the estate's creditors for counsel's activities and expenditures on behalf of the estate until after the full amount of a substantial retainer has been exhausted invites abuse, however unintended.

relation to the potential gain to be had by agreeing to represent NBI. In also bargaining to "earn" their retainers up front, counsel bargained for more than a debtor can commit on behalf of a debtor-in-possession. In "bargaining" with NBI to surrender its right to trust fund interest on significant sums, counsel effectively compelled NBI to finance its attorneys' operations rather than its own at a time when the company presumably can ill afford to do so.

The consideration [13] counsel gave in return for the premium they extracted appears to be no more than ethically and legally required of any attorney who agrees to represent a client in litigation, particularly a debtor in bankruptcy. Approval of compensation over and above the norm in terms of "earned" retainers under these circumstances might well create disqualifying conflicts where none otherwise exist. *See generally* 11 U.S.C. Section 548.

■ Whatever conflict may be inherent in a secured relationship between NBI and counsel incident to the retainers is one the Code recognizes and generally tolerates as an exception in assessing disinterestedness, so long as fully disclosed and subjected to the Court's scrutiny in making such determination. *See In re Martin*, 817 F.2d 175 (1st Cir.1987). *See generally In re Flying E Ranch*, 81 B.R. 633, 636–37 (Bankr. D.Colo.1988). Deposit of the retainers in trust provides a means of balancing the interests of the parties, and further insures the Court's role in that process. *See In re*

*Tri–City Water Ass'n.*, 91 B.R. 547 (Bankr. S.D.1988).

Consideration of whether the retainers at issue are or are not property of the estate based on state contract law is largely academic in this case.[14] It is not dispositive of reasonableness under Section 328(a). Furthermore, there is no real dispute that the retainers here would have been property of the estate if not transferred by NBI prepetition. *See* 11 U.S.C. Section 329(b).

Counsel acknowledge that their purportedly "earned", "minimum fee retainers", though characterized as non-refundable by contract, are nonetheless potentially refundable or subject to disgorgement in accordance with Section 329(b). Neither the Trustee nor the Court take issue with counsel's assessment that their "minimum fee" will in all probability be justified by actual services in this case, and that potential refund of all or part of the retainers at issue is unlikely. However unlikely, this potential for refund is inherently inconsistent with the retainers' status as "earned" without provision of *actual* services. The court in the *McDonald* case apparently regards such inconsistency as insignificant. This Court does not.

■ The ownership status of the retainers at issue, as between NBI and counsel by virtue of their pre-petition agreements had this Chapter 11 case never been commenced, is not binding on the Court. Neither a debtor nor debtor's counsel have unrestricted freedom in defining their relationship as attorney and client under Title 11. The substance of that relationship is

---

**13.** Counsel claim to have provided three types of consideration in exchange for their "earned retainers": 1) the irrevocable commitment to represent NBI in this Chapter 11 case even if interim compensation is not available; 2) the agreement not to undertake any other representation which would create a disqualifying conflict; and, 3) the promise to "credit" the retainers against fees for post-petition services rendered.

**14.** The Court has discovered only two Colorado non-bankruptcy cases which arguably support counsel's contention, at least in principle, that freedom of contract between attorney and client allows for minimum fees or fees earned in advance of actual services based on contractual

intent. *See Chase v. Collins,* 75 Colo. 156, 225 P. 255 (1924); *Western Oil Fields, Inc. v. Coit,* 29 Colo.App. 567, 487 P.2d 562 (1971). Both cases concern the enforceability of fee agreements or understandings and collection or retention of attorneys fees. Both cases, however, are factually distinguishable from this matter and would not support a decision by this Court approving the retainers here. The fees at issue in these cases had in fact been earned by virtue of either: 1) the occurrence of an express contingency; or, 2) actual performance of the services promised. Furthermore, compensation was claimed only after the fact, and the fee agreement in neither case was subject to the type of Court scrutiny applicable in this matter.

subject to Court scrutiny. The existence of the relationship itself is dependent on Court approval. Adjustment of the terms of that relationship is within the Court's discretion.

The Court finds that the terms of the parties' agreements in this case concerning the nature and effect of the retainers at issue are unreasonable and excessive. In this jurisdiction, a Chapter 11 debtor retains an interest in any pre-petition retainer paid, in whole or in part, in contemplation of post-petition legal services. Accordingly, the NBI funds transferred in payment of these retainers are necessarily property of the estate. Counsel's right to payment from their retainers for post-petition services rendered is not fixed until such time as the Court determines that: 1) actual and necessary services have been provided to the estate; 2) the fees requested by counsel for such services are reasonable; and, 3) payment is authorized. Until these prerequisites are satisfied, NBI and counsel are obligated to maintain the retainers in trust.

## CONCLUSIONS

Issues of compensation schemes aside, there is no dispute that the two law firms selected by NBI as Chapter 11 co-counsel are qualified to represent the debtor-in-possession. They are qualified in terms of both legal expertise and experience with NBI affairs. Both firms are appropriately disinterested.

The Court appreciates counsel's candor in disclosing the scope and nature of their pre-petition employment agreements with NBI, and in confronting the Trustee's challenge to those agreements. The Court realizes that the specific issue raised here is of relatively recent vintage before the bankruptcy courts. It has yet to be decided in the District of Colorado. What little potentially pertinent case law does exist is conflicting.

■■■ Approval of the employment of Chapter 11 counsel, and the terms of the conditions thereof, is within the Court's discretion, but only if found to be in compliance with both the spirit and the letter of the Bankruptcy Code and Rules after scrutiny by the Court. In a case under Title 11, the relationship between a debtor and the debtor's attorneys as attorney and client is subject not only to state law, but, more importantly, to bankruptcy law. Where any potential discrepancy between these two bodies of law exists, the terms, conditions, and policies of federal bankruptcy law control. Pre-petition retainers, deemed by debtor and counsel to be "earned on receipt", whatever their status might be outside the bankruptcy context, are clearly at odds with bankruptcy principles, as well as with the disciplinary rules governing attorneys who practice before the bankruptcy courts in the District of Colorado.

■■■ Freedom of contract is necessarily limited in the bankruptcy context. Bankruptcy counsel and debtors are not at liberty to bargain away the rights and responsibilities of a debtor-in-possession, nor the protections afforded creditors and other parties in interest in a bankruptcy case, under the guise of freedom of contract. They cannot evade the jurisdiction of the Court by choice, nor limit exercise of the Court's discretion by fiat. They cannot negate or defer application of the Bankruptcy Code and Rules by design. A pre-petition agreement between counsel and a prospective debtor-in-possession which purports to do any of these things cannot be considered reasonable and cannot be condoned as such in a Chapter 11 case.

The pre-petition agreements between I & S and NBI and between ST & G and NBI, specifically as to their provisions concerning the "earned on receipt" nature of the pre-petition retainers paid, and generally as to any other provisions of which this Court is not fully advised but which purport to accomplish analagous ends, must be rejected by this Court as unreasonable and excessive in nature. They exceed the bounds of propriety under the Bankruptcy Code.

■■■ The retainer funds paid by NBI are property of the estate. They must be held by counsel in trust. Counsel may draw against these trust funds in payment of fees and costs for post-petition legal

services and related expenses incurred only in compliance with applicable provisions of the Bankruptcy Code and Rules and as otherwise specifically authorized by this Court.

### ORDER

In accordance with the foregoing, the Court orders that NBI's motions to authorize employment of counsel are hereby GRANTED, but that the proposed terms and conditions of said employment are approved only in accordance with the terms of this order and the foregoing memorandum opinion, and such other and further order as this Court may enter. Specifically, the Court

ORDERS that:

1) NBI is authorized to employ the law firm of Ireland & Stapleton as general corporate counsel and local bankruptcy counsel to represent NBI in this Chapter 11 case;

2) NBI is further authorized to employ the law firm of Stutman, Treister & Glatt, Professional Corporation, as special insolvency counsel in this Chapter 11 case;

3) NBI's employment of Ireland & Stapleton and of Stutman, Treister & Glatt in this case is authorized as of February 6, 1991;

4) The pre-petition agreements between NBI and Ireland & Stapleton and Stutman, Treister & Glatt are null and void as they pertain to the purportedly "earned" character of the pre-petition retainers paid by NBI to counsel for Chapter 11 representation;

5) Any other provision of said agreements which intentionally or effectively purports to limit this Court's jurisdiction or discretion in relation to NBI compensation of Ireland & Stapleton or Stutman, Treister & Glatt, or to authorize payment to either firm for services in or related to this Chapter 11 case other than as specifically approved by the Court, shall also be considered of no force and effect in this case.

6) As to the pre-petition $200,000 retainer received by Ireland & Stapleton, and the $463,447.25 pre-petition retainer received by Stutman, Treister & Glatt in this case, the Court orders that:

a) Ireland & Stapleton and Stutman, Treister & Glatt are directed to account for and segregate from their respective firms' funds, and to immediately deposit into an appropriate interest-bearing client trust account for the benefit of the NBI Chapter 11 estate, the pre-petition retainers received from NBI; provided, however, that each firm may retain, subject to other provisions of this order, that portion of their respective retainers equivalent to—

i) 75% of the firms' respective accountings for actual and necessary post-petition legal services within the scope of their employment by NBI for the period from February 6, 1991 through May 31, 1991; *plus,*

ii) 100% of the firms' respective accountings for actual and necessary costs incurred on behalf of the NBI estate from February 6, 1991 through May 31, 1991; *less,*

iii) that dollar amount equal to the interest which would have accrued on the total amount of the pre-petition retainers paid Ireland & Stapleton and Stutman, Treister & Glatt, and which would have and should have been credited to NBI, if the retainers had been deposited into an appropriate interest-bearing client trust account upon receipt by Ireland & Stapleton and Stutman, Treister & Glatt.

iv) In addition to the foregoing, ST & G may retain that $63,447.25 portion of their retainer previously claimed in payment of, or credited by the firm against, fees and costs incident to pre-petition services relating to NBI's Chapter 11 filing.

b) Retention of the foregoing amounts by Ireland & Stapleton and Stutman, Treister & Glatt is authorized only on the express condition that the firms shall submit their respective accountings for such amounts to this Court in an appropriately documented and duly-noticed interim fee application within ten (10) days of the entry of this order.

c) Furthermore, in conjunction with such applications, counsel shall provide the

Court with evidence of compliance with the trust accounts requirements of this order, and shall also render an accounting of the services and related expenses for which counsel received the payments from NBI reflected in the firms' Section 329 disclosure statements in this case.

d) If such applications, verifications, and accountings are not timely filed, all or any part of their respective retainers not previously placed in a client trust account by either Ireland & Stapleton or Stutman, Treister & Glatt shall be so deposited at the end of such ten (10) day period, and shall continue to be held in said account or accounts until such time as an appropriate fee application is otherwise submitted to *and* approved by this Court.

e) Retention of any amount by Ireland & Stapleton or Stutman, Treister & Glatt pursuant to the terms of this order shall remain subject to the provisions of the Bankruptcy Code and Rules. The terms of this Court's Order dated April 24, 1991 (attached hereto as Appendix A), shall also apply to the extent consistent with the conditions of this order.

### APPENDIX A

In re: NBI, INC., a Delaware corporation, Debtor.

Employer's Tax ID # 84–0645110

Filed April 24, 1991.

### ORDER ESTABLISHING INTERIM FEE AND EXPENSE REIMBURSEMENT APPLICATION PROCEDURE

The Motion of the Official Committee of Unsecured Creditors (the "Committee") for an Order establishing a procedure for the payment of interim compensation and for the reimbursement of expenses incurred by professionals employed herein as authorized by the Court, and members of the Committee appointed by the United States Trustee, has been duly considered by this Court. The Court is also familiar with the files and records in this case. The Court finds that notice of said Motion was duly given in accordance with the order limiting notice entered in this case, and that the adoption of an interim fee procedure is necessary in connection with the administration of the estate.

NOW, THEREFORE, IT IS HEREBY

ORDERED that, unless and until otherwise ordered by this Court, the procedure for reimbursement of expenses to members of the Committee and for awarding interim compensation and reimbursement of expenses to all attorneys, accountants, and other professionals employed pursuant to order of this Court which request the application of the procedures set forth herein to the payment of interim compensation and reimbursement of expenses, shall be as follows:

A. On or before the twentieth day of each month the members of the Committee and the attorneys, accountants, and other professionals whose employment by the Committee appointed under 11 U.S.C. § 1102 shall have been authorized by this Court may submit statements to the Debtor by sending said statements for interim compensation to the appropriate individual as set forth in the Uniform Guidelines for Interim Compensation and Expense Reimbursement attached hereto as Exhibit 1 ("Uniform Guidelines") (1) for reimbursement of expenses paid or incurred on or before the last day of the preceding month, in the instance of Committee members or (2) for compensation and for reimbursement of expenses paid or incurred on or before the last day of the preceding month, in the instance of attorneys, accountants, and other professionals. Any expenses or compensation not billed in one month may be billed in a subsequent month.

B. All statements submitted to the Debtor in accordance with this Order shall be delivered to the attention of Nancy Hamilton, NBI, Inc., 3375 Mitchell Lane, P.O. Box 9001, Boulder, Colorado 80301, and shall contain the following information in either schedule or narrative form:

1. With respect to all expenses incurred by Committee members and those expenses of professional persons incurred away from their respective offices, the amount, the date incurred, and the nature thereof. The Debtor shall

reimburse such expenses in accordance with the Uniform Guidelines attached hereto as Exhibit 1 and pursuant to any additional uniform procedures which are developed by the Debtor (which may include appropriate forms) by which such requests for reimbursement shall be submitted.

2. With respect to compensation to be paid, there shall be provided a daily accounting of the services rendered which shall include the date of the service rendered, an identification of the person or persons who performed the service, the time devoted in rendering the service on the day in question, and a description of the services so rendered.

3. With respect to office expenses, costs, and other special charges, a monthly description of all such charges (e.g., "long distance phone charges," "duplicating expenses," etc.), and a description of the method by which such charges are calculated.

4. A cover sheet in a form substantially similar to that attached hereto as Exhibit 3.

C. Statements submitted by attorneys, accountants, and other professionals shall be based upon their respective normal and customary hourly rates for a case of this type as they exist from time to time, or, at the hourly rates set forth by such professionals in their respective applications for employment filed in this proceeding. Unless previously submitted to the Court, a schedule of such rates, together with a brief biographical sketch of each professional who is expected to devote a substantial portion of his/her time in rendering services in connection with these cases shall be filed by such attorneys, accountants, or other professionals with the Court and served upon the persons listed on Exhibit 2 at least ten (10) days before the first interim monthly payment is sought.

Not less than ten (10) days' notice of any proposed change in such hourly rates shall be given in the same manner. The parties upon whom notice is served may request a hearing before this Court as to the reasonableness of any such rates within such ten (10) day period. Only in the event a hearing concerning the reasonableness of the hourly rates is timely requested shall payments for interim compensation based on those changed rates be suspended until this Court shall have ruled thereon. If no hearing is timely requested, payments shall be made pursuant to the changed rates as set forth in the notice.

D. All statements submitted in accordance with paragraph B above shall be reviewed by the Debtor and, if acceptable and if no hearing under paragraph C above is pending, such statements will be paid within twenty days of receipt.

E. Payments shall be made as follows:

1. To attorneys, accountants, and other professionals, 100% of expenses and 75% of compensation for services rendered;

2. To Committee members, 100% of actual and reasonable expenses incurred.

F. Commencing with the period ending April 30, 1991, and for each three-month period thereafter, each party who has sought reimbursement of expenses or interim compensation shall, within forty-five (45) days following the end of any such period, file with the Court, and serve upon the persons listed on Exhibit 2 hereof, an application for approval of the payments actually billed during the preceding three-month period. The first application shall cover the period commencing February 6, 1991, and ending April 30, 1991. Counsel for the Committee may file a single application on behalf of all members of the Committee for reimbursement of expenses. Each application may be approved by the Court, in whole or in part, after notice and hearing. If any party who has received one or more payments during a three-month period in accordance with paragraph E above fails to file an application for approval of those payments so received as required by this paragraph F, then the Debtor shall not pay such party any further monthly payments (whether for reimbursement of expenses or for compensation) unless and until an application for approval of previously made payments has been filed with the Court, or unless otherwise ordered by the Court.

G. At any time on or after July 31, 1991, any professional person who has

theretofore received interim compensation at 75% of customary hourly rates may file an application with the Court to receive as interim compensation amounts equal to the previously unpaid 25% ("Special Interim Compensation"). No professional person shall apply for Special Interim Compensation more than semi-annually. Any applications for Special Interim Compensation which shall be filed shall be heard at the same time and in the same manner as the applications described in paragraph F above. Nothing contained herein shall be construed as giving any party any right to be awarded any such Special Interim Compensation nor to prejudice the right of any entity to object to the Court's awarding of all or any portion of the Special Interim Compensation sought.

H. Within 20 days after the due date for the filing of interim fee applications, the Debtor shall file a report with the Court, with copies to the parties which filed such interim fee applications, regarding the allowance of fees and expenses requested by professionals retained by the Committee or the Debtor. If objections are made to any fee application, those matters may be set for hearing. In any event, no order authorizing interim fees will enter until such time as said reports are filed with the Court, unless otherwise ordered by the Court.

I. Each party filing an application in accordance with paragraph F or paragraph G shall give notice of the filing of such applications to all entities entitled to such notice pursuant to Bankruptcy Rule 2002 and the order limiting notice entered in this case.

J. Nothing contained herein shall be construed to prejudice the right of any professional to seek an award of such additional compensation or expenses incurred in excess of the Uniform Guidelines at the conclusion of this case as may be appropriate under the provisions of 11 U.S.C. § 330.

K. Any entity whose employment has not been previously approved by this Court, but who desires the allowance and payment of an administrative expense under 11 U.S.C. § 503, shall file an application for such allowance with the Bankruptcy Court and shall serve a copy thereof upon the persons listed on Exhibit 2 hereof and all persons entitled to notice of such application pursuant to Bankruptcy Rule 2002 or order of this Court. The form of each such application and the information contained therein shall conform to the fullest extent appropriate to the other provisions of this Order. Nothing contained in this paragraph shall be construed as giving any person any right to have any administrative expense allowed or paid when sought, nor to prejudice the right of any party to object to the allowance or payment of all or any portion of the administrative expense alleged in any such application.

L. The failure of the Debtor, the Committee, any party-in-interest, or the United States Trustee to object to any particular item in any of the applications referred to in this Order shall not be deemed to prejudice their right to object to any similar matter in any future applications for compensation and/or reimbursement of expenses or to final allowance of compensation or reimbursement of expenses pursuant to 11 U.S.C. § 330.

M. All allowances of interim compensation and reimbursement of expenses made herein shall be without prejudice to any party in interest to seek reconsideration of the matter for cause.

N. All allowances of interim compensation and reimbursement of expenses made herein shall be subject to this Court's right to review the same prior to the conclusion of this case pursuant to 11 U.S.C. § 330.

Dated this <u>24th</u> day of <u>April,</u> 1991.

/s/ Donald E. Cordova
Donald E. Cordova
Bankruptcy Judge

### EXHIBIT 1

### UNIFORM GUIDELINES FOR INTERIM COMPENSATION AND EXPENSE REIMBURSEMENT

A. *Attorneys' Monthly Statements and Interim Applications for Compensation*

All monthly statements for interim compensation for counsel to the Committee

shall be initially submitted on or before the twentieth day of each month to either Co-Chair of the Committee or their respective designees. The Co-Chair reviewing such statements, or its designee, after reviewing the statements, shall forward the statements to the Debtor's attorneys, with a letter certifying that the services rendered are within the scope of the work requested and that the fees requested are reasonable and appropriate. Once these statements and letters of certification are received by the Debtor, they will be handled in the same manner as are other attorneys' statements.

All monthly statements for interim compensation for attorneys employed by the Debtor and which are subject to these procedures shall be sent on or before the twentieth day of each month to the Chief Financial Officer. The Chief Financial Officer after reviewing the statements shall forward them to the Chief Executive Officer who will certify that the services rendered are within the scope of the work requested and that the fees requested are reasonable and appropriate.

The Debtor's Accounting Department will review all numbers, calculations, and otherwise serve as a double check on the Committee Co-Chair and Chief Executive Officer approvals. Once the statements have been approved by either of the Committee Co-Chairs, in the case of committee professionals, the Chief Executive Officer and checked by the Accounting Department, they may be paid.

B. *Monthly Statements and Applications for Compensation by Other Professionals Employed by the Committee*

Professionals other than attorneys employed by the Committee shall submit their respective monthly statements to either Co-Chair of the Committee, or their respective designees. The Co-Chair, or its designee, shall review these monthly statements to assure that the work performed was within the scope of that requested and that the fees requested are reasonable and prop-

er. Once this task is completed, the Co-Chair, or its designee, shall forward the statement, together with a letter certifying the above, to the Debtor's Chief Financial Officer. When the monthly statements have been received by the Debtor, they will be processed as set forth in paragraph A.

C. *Monthly Statements and Applications for Compensation by Other Professionals Employed by the Debtor.*

Professionals other than attorneys employed by the Debtor shall submit their monthly statements for compensation to the Debtor's Chief Financial Officer for review and approval. After the Chief Financial Officer has reviewed these statements and approved same, they will be submitted to the Accounting Department for final review and payment.

Internal reviews of monthly interim statements shall be completed within twenty days of receipt and either paid or sent back with a statement of reasons as to why payment is not being made. The Debtor will prepare and circulate to those parties listed on Exhibit 2 a summary report of all fees and expenses requested and paid by each Estate during the previous quarter.

D. *Guidelines Relating to Interim Compensation Requests.*

1. Monthly statements shall be sufficiently detailed so as to permit identifying the project or tasks performed, the person performing the task and the hours spent by each employee of the firm rendering professional services.

2. The normal hourly rates for each involved individual employee of a professional organization for the current calendar year in which the application is being made shall be set forth.

3. Where possible, work shall be performed by individuals whose level of experience are appropriate to the task.

4. Where possible in connection with routine legal matters, a single attorney working on the matter should be sufficient. Obviously, in complex problems and certain types of litigation where various levels of

expertise and experience should be brought to bear, more than one attorney from a firm is expected to function on the task.

5. All quarterly interim applications filed by any professionals employed pursuant to Court Order should have attached copies of all monthly statements submitted for payment and should include a recap in summary form of the work performed and time spent as reflected in the interim statements and the Cover Sheet adopted in this District for all fee applications.

6. Compensation for attorneys', accountants', and other professionals' time spent in the preparation of monthly billings or quarterly interim applications for compensation should be billed monthly and will be paid at the normal billing rate schedule unless such rates differ from the rates set forth in the application to employ such professionals.

### E. *Reimbursement of Expenses*

The question of expenses is a sensitive one. A statement of principles governing reimbursement of costs, which addresses itself to most significant issues, follows. With respect to members of the Committee, it is the initial responsibility of each Co–Chair, or their respective designees, to review and approve the expense reports submitted by the members of that Committee and to submit such expenses for payment.

### F. *Reimbursement of Costs and Expenses*

1. General Principles

a. *Travel*—Air travel is expected to be a regular coach fare for all flights. For flights of two hours or more, business coach or first-class can be considered acceptable where written justification is submitted establishing a business basis for use of business coach or first-class seating and where the monetary difference between regular coach and first-class is reflected in the expense report. Where business coach or first-class travel is used and those involved do not wish to submit justification therefor, such parties may submit for reimbursement an amount equal to regular coach fare for that particular flight.

b. *Hotel and Meals*—Due to the wide variation in hotel and restaurant costs in the various cities in which meetings may be held, it is not possible to establish a single guideline for these types of expenses.

All persons will be required to exercise discretion and prudence in connection with hotel and meal expenditures. No reimbursement will be made for any expenditures for alcoholic beverages.

c. *Copying*—Xeroxing and duplication charges are to be billed at no more than 25 cents per page.

d. *Documentation.* For all expenditures in excess of $50.00, documentation must be retained and made available to the Debtor on request. Where possible, receipts should be obtained for all expenditures. Where one professional or one Committee member pays a bill which includes more than his own expenses, the number and identity of the individuals involved must be included in the expense reimbursement request.

2. Committee Expenses

a. Actual and reasonable expenses of one representative of each Creditors' Committee member will be reimbursed as well as the expenses of the professionals employed by the Committee.

b. To the extent that any individual Committee member may employ any professional or have any professional attend meetings or perform other services, such professional's expenses and fees will not be reimbursed by the Debtor's estate unless allowed under 11 U.S.C. § 503.

### EXHIBIT 2
### PARTIES TO RECEIVE MONTHLY FEE STATEMENTS

All Statements
Ms. Nancy Hamilton
NBI, Inc.
Post Office Box 9001
Boulder, CO 80301

Charles D. Axelrod, Esq.
Stutman, Treister & Glatt

232

Suite 900
3699 Wilshire Boulevard
Los Angeles, CA 90010

Margaret Toal–Rossi, Esq.
Ireland, Stapleton, Pryor & Pascoe, P.C.
1675 Broadway, Suite 2600
Denver, CO 80202

David M. Fried, Esq.
Office of U.S. Trustee
Room 300
1845 Sherman Street
Denver, CO 80203

EXHIBIT 3

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

COVER SHEET FOR APPLICATION FOR PROFESSIONAL COMPENSATION

Name of Applicant: _____

Authorized to Provide
Professional Services to: _____

Date of Order Authorizing Employment: _____

Period for Which
Compensation is Sought: _____

Amount of Fees Sought: _____

Amount of Expense
Reimbursement Sought: _____

This is an:  Interim Application _____ Final Application _____

If this is not the first application filed herein by this professional, disclose as to all prior fee applications:

| Date Filed | Period Covered | Total Requested (Fees & Expenses) | Total Allowed |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

The aggregate amount of fees and expenses paid to the Applicant to date for services rendered and expenses incurred herein is:
$ _____

