**In re PRINTCRAFTERS, INC., Debtor.**

**Weinman, Cohen & Niebrugge, P.C., Plaintiff/Appellant,**

v.

**M. Stephen Peters, Chapter 7 Trustee, Defendant/Appellee.**

No. Civ.A. 97 N 465.

Bankruptcy No. 96–12068 MSK.

United States District Court, D. Colorado.

March 22, 1999.

---

Elizabeth Brown, Holme Roberts & Owen, LLP, Denver, CO.

Jeffrey A. Weinman, Denver, CO.

## ORDER AND MEMORANDUM OF DECISION

NOTTINGHAM, District Judge.

This is an appeal from an order entered by the United States Bankruptcy Court for the District of Colorado ("the bankruptcy court"). Appellant Weinman, Cohen & Niebrugge ("WC & N") asserts that the bankruptcy court improperly sustained the objection of Trustee M. Stephen Peters ("the trustee") to WC & N's application of a prepetition retainer in partial satisfaction of its chapter 11 administrative claim. Jurisdiction is based on 28 U.S.C.A. § 158(a) (West Supp.1998).

### FACTS

On February 28, 1996, Debtor Printcrafters, Inc. ("the debtor" or "the debtor-in-possession") filed a voluntary bankruptcy petition under chapter 11 of the United States Bankruptcy Code, 11 U.S.C.A. §§ 101–1330 (West 1993 & Supp.1998). (R. on Appeal, Doc. 1 [Voluntary Petition] [filed Apr. 17, 1997] [hereinafter "R."].) On the same day, the debtor applied to the bankruptcy court for permission to employ WC & N as counsel to it as debtor-in-possession. (Id., Doc. 4 [Application to Employ WC & N as Counsel for Debtor–in–Possession].) In addition, WC & N filed notice that it had received a $25,000 retainer from the debtor, a portion of which had already been expended for prepetition services and costs.[1] (Id., Doc. 7 [Notice Pursuant to Local Rule 202 of Debtor's Application to Employ WC & N as Counsel for Debtor–in–Possession].) On April 2, 1996, Bankruptcy Judge Marcia S. Krieger authorized the employment of WC & N as counsel to the debtor-in-possession. Further, Bankruptcy Judge Krieger (1) found that WC & N was a "disinterested person" under 11 U.S.C.A. § 101 and held no relevant interests adverse to the estate, (2)

approved the retainer, (3) ordered WC & N to hold all funds in an interest-bearing trust account, and (4) forbade WC & N from drawing against the account, pending entry of a bankruptcy court order authorizing payment of fees and expenses. (Id., Doc. 35 [Order Authorizing Employment of Att'y by Debtor–in–Possession].)

On June 18, 1996, the case was converted to one under chapter 7 of the Code, and the trustee was appointed. On August 14, 1996, WC & N applied for an allowance of administrative expenses for its services to the debtor, pursuant to 11 U.S.C.A. § 503 (West 1993 & Supp.1998). (Id., Doc. 133 [Application for Allowance of Admin. Expenses of WC & N Pursuant to 11 U.S.C. § 503].) On September 3, 1996, the trustee filed his objections to WC & N's administrative-expenses application. (Id., Doc. 140 [Trustee's Limited Objection to Application for Allowance of Admin. Expenses of WC & N].) The trustee objected to WC & N's application to the extent that it sought an order authorizing payment of approved attorney fees from the retainer prior to payment of all other administrative expenses incurred post-conversion. (Id., Doc. 140 [Trustee's Limited Objection to Application for Allowance of Admin. Expenses of WC & N].) On February 25, 1997, Bankruptcy Judge Krieger filed an order (1) allowing WC & N $25,621.50 in fees and $2,979.79 in expenses for a total $28,601.29 in administrative expenses under chapter 11, (2) ordering WC & N to account to the trustee for all funds held in trust, (3) declaring that all such trust funds were property of the estate in which WC & N holds no lien or equitable interest, and (4) permitting WC & N to continue to hold such funds pending further administration of the bankruptcy estate, and (5) withholding payment to WC & N from such funds absent certification that sufficient assets exist to pay all administrative

---

1. More specifically, WC & N had already drawn $6,483.48 against the retainer for prepetition services and costs, leaving a balance of $18,416.52 at the time the bankruptcy petition was filed. (Id., Doc. 133 [Application for Allowance of Admin. Expenses of WC & N Pursuant to 11 U.S.C. § 503].) It appears from the record that WC & N did not specify these figures until it applied to the court for administrative expenses on August 14, 1996.

claims of equal or senior priority. (*Id.*, Doc. 211 [Order on Application for Allowance of Admin. Expenses of WC & N] [hereinafter "Krieger's Order"].)

On March 7, 1997, WC & N filed a motion for leave to appeal Bankruptcy Judge Krieger's February 27, 1997, ruling to this court. (Mot. for Leave to Appeal [filed Mar. 7, 1997].) On March 20, 1997, this court granted WC & N's motion for leave to appeal. (Min. Order [filed Mar. 20, 1997].) WC & N contends that, pursuant to Colorado law, it has a lien on the funds paid by the debtor as a prepetition retainer for postpetition services. Accordingly, WC & N claims it is entitled to draw immediately from those funds as compensation for its court-approved administrative expenses. (Br. of Appellant, Weinman, Cohen & Niebrugge, P.C. [filed May 16, 1997].)

## ANALYSIS

### 1. *Standard of Review*

 When a district court reviews a final order entered by a bankruptcy court, the conclusions of law made by the bankruptcy court are subject to *de novo* review. *Rowe Int'l, Inc. v. Herd (In re Herd)*, 840 F.2d 757, 759 (10th Cir.1988); *Branding Iron Motel, Inc. v. Sandlian Equity, Inc. (In re Branding Iron Motel, Inc.)*, 798 F.2d 396, 399–400 (10th Cir.1986). The findings of fact adopted by the bankruptcy court, however, must not be set aside unless they are clearly erroneous. Bankr.R. 8013; *Fullmer v. United States (In re Fullmer)*, 962 F.2d 1463, 1466 (10th Cir. 1992); *Branding Iron Motel, Inc.*, 798 F.2d at 399. Because the issue presented here is a legal one, I review it *de novo.*

### 2. *Attorney Compensation in Bankruptcy*

The Code provides a series of rules and regulations governing the payment of compensation for attorneys representing bankruptcy estates. Colorado bankruptcy case law holds that "[c]lear and specific provision is made in 11 U.S.C.[A.] § 503(b)(2) to pay debtor's counsel, as a cost of administration, for services rendered to a debtor post[]petition. It is tailored to allow payment to debtor's counsel, but only within the scheme and safeguards embodied in [s]ections 327 through 331 of the [] Code." *In re Kahler*, 84 B.R. 721, 724 (Bankr. D.Colo.1988) Indeed, section 503 of the Code provides that "[a]fter notice and a hearing, there shall be allowed, administrative expenses ... including ... compensation and reimbursement awarded under section 330(a)." 11 U.S.C.A. § 530(b)(2).

Section 327 of the Code permits the trustee, "with the court's approval [to] employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties." 11 U.S.C.A. § 327(a). Once the court has approved an attorney's employment, section 328 of the Code permits the trustee to contract to pay an attorney on "any reasonable terms and conditions of employment," including a retainer, an hourly, or a contingency-fee basis. 11 U.S.C.A. § 328(a). The bankruptcy court may, however, modify this arrangement if circumstances later prove that the arrangement was "improvident" or if the attorney violates the duty to remain free of conflicts-of-interest during his tenure. *Land v. First Nat. Bank in Alamosa*, 116 B.R. 798, 803 (D.Colo.1990) (quoting 11 U.S.C.A. § 328[c] ). Attorney retainer agreements are especially common under section 328:

> Prior to commencement of a chapter 11 case, it is common for a debtor's professionals to obtain retainer agreements and fees to insure compensation for costs anticipated during the pendency of the case.... With respect to [such] 'secured' retainers, courts generally hold that a professional with such a prepetition retainer is a "secured creditor" and has a security interest in the retainer,

noting that the professionals receiving prepetition retainers to insure payment of fees to be earned in the chapter 11 case (or postpetition retainers authorized by the court) become secured creditors, by virtue of a possessory interest in cash. 1 *Collier on Bankruptcy,* ¶ 328.02[1][b], [c][iii] (Lawrence P. King ed., 3rd ed. rev. 1998). Expanding this doctrine to cover chapter 11 cases which, like the instant cases, are converted to chapter 7 cases, other bankruptcy courts have held that the attorney retainer remains a protected interest:

> If the case fails and is converted to [c]hapter 7, the retainer enables the debtor's attorney to avoid the subordination of the [c]hapter 11 expenses of administration to those incurred in administering the [c]hapter 7 estate mandated by section 726(b) of the [] Code.

*In re Burnside Steel Foundary Co.,* 90 B.R. 942, 944 (Bankr.N.D.Ill.1988); *see also In re K & R Mining, Inc.,* 105 B.R. 394, 397 (Bankr.N.D.Ohio 1989) (quoting same).

### 3. Attorney Liens

■ "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law. Property interests are created and defined by state law." *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Accordingly, state law determines the validity and extent of an attorney's lien in bankruptcy. *In re Campbell,* 26 B.R. 145 (Bankr.D.Colo. 1983).

■ "Under Colorado law, the common law attorney's lien is not preserved and no lien exists apart from statute." *Donaldson v. Gaudio,* 260 F.2d 333, 337 (10th Cir.1958) (citing *Fillmore v. Wells,* 10 Colo. 228, 15 P. 343 [Colo.1887].) Colorado law recognizes only statutory attorney liens which arise automatically under Colo. Rev.Stat. §§ 12–5–119 and 120 (1997). Collectively, these statutes define two types of liens, the "possessory lien," and the "charging lien." *Id.* At issue in this case is the possessory lien as it is explained in section 119: "[a]ll attorneys—and counselors-at-law shall have a lien on any money ... in their hands ... for any fees or balance of fees due or to become due from any client." Colo.Rev.Stat. § 12–5–119. Accordingly, "any attorney who may be retained or appointed to render professional services to a debtor[-]in[-]possession becomes a creditor of the estate just as soon as any compensable time is spent on account." *In re Martin,* 817 F.2d 175, 180 (1st Cir.1987).

### 4. Application to Facts

■ In this case, prior to petition, WC & N and the debtor established a retainer agreement for $25,000, $6,583.48 of which was expended for prepetition costs. (R., Doc. 211 [Krieger's Order at 2].) Postpetition, the bankruptcy court approved the appointment of WC & N as the debtor's counsel under section 327 and approved its retainer, although it did not authorize any particular retainer agreement or attorney lien. The status of this retainer is the issue now before me.

The bankruptcy court and the trustee argue that, because WC & N had been fully compensated for prepetition services at the time when the debtor filed its chapter 11 petition, WC & N had no uncompensated work—and therefore no lien—when debtor filed its petition. Further, the bankruptcy court held that WC & N could not have obtained a postpetition lien for postpetition services without running afoul of the Code's automatic stay provisions. (R., Doc. 211 [Krieger's Order at 10, 11].) In particular, 11 U.S.C.A. § 362(a)(4) proscribes any prepetition liens against the property of the estate without further compliance with the credit authorization procedures of described in U.S.C.A. § 364(c). (*Id.,* Doc. 211 [Krieger's Order at 10, 11].) The bankruptcy court also posited that WC & N could not simultaneously claim possession of the retainer

funds postpetition and maintain the requisite disinterested status. (*Id.* Doc. 211 [Krieger's Order at 10].)

 Contrary to the decision of the bankruptcy court, however, I find that WC & N did obtain a prepetition security interest in the retainer in accordance with state statute, the Code, and the bulk of relevant bankruptcy case law. First, the plain language of section 119 indicates that a retaining lien may exist for fees "due *or to become due* from any client." Colo.Rev. Stat. § 12–5–119. "In a statutory construction case, the beginning point must be the language of the statute, and[,] when a statute speaks with clarity to an issue[,] judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 475, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992) (citing *Demarest v. Manspeaker,* 498 U.S. 184, 190, 111 S.Ct. 599, 603, 112 L.Ed.2d 608 [1991] ). If an attorney who possessed funds of a client had a present interest only in fees already earned, this statutory language would be utterly superfluous. The bankruptcy court never addressed this aspect of the clear statutory language, and I decline to disregard it here.

This interpretation accords with the case law on prepetition liens in bankruptcy cases. "Most bankruptcy courts have concluded that a prepetition retainer paid by a debtor to counsel for services in connection with a case is security for, or held in trust for, payment of fees and costs to be incurred." *In re Printing Dimensions, Inc.,* 153 B.R. 715, 719 (Bankr.D.Md.1993) (citing *In re Kinderhaus Corp.,* 58 B.R. 94 [Bankr.D.Minn.1986]; *In re Chapel Gate Apartments, Ltd.,* 64 B.R. 569 [Bankr. N.D.Tex.1986]; *Matter of Colin,* 44 B.R. 709 [Bankr.W.D.Mo.1984]; *Matter of Indep. Sales Corp.,* 73 B.R. 772, 774–75 [Bankr.S.D.Iowa 1987]; *In re Chicago Lutheran Hosp. Ass'n,* 89 B.R. 719, 734 n. 21 [Bankr.N.D.Ill.1988]; *In re Burnside Steel Foundary Co.,* 90 B.R. 942, 945 [Bankr.

N.D.Ill.1988]; *In re Tri–County Water Ass'n, Inc.,* 91 B.R. 547, 551 [Bankr.D.S.D. 1988]; *In re Leff,* 88 B.R. 105, 107 [Bankr. N.D.Tex.1988], *aff'd sub nom. Stewart v. Law Offices of Dennis Olson,* 93 B.R. 91 [N.D.Tex.1988]; *In re C & P Auto Transp., Inc.,* 94 B.R. 682 [Bankr.E.D.Cal. 1988]; *Matter of K & R Mining, Inc.,* 105 B.R. 394, 396–98 [Bankr.N.D.Ohio 1989]; *In re Crimson Invs., N.V.,* 109 B.R. 397, 402 [Bankr.D.Ariz.1989]; *In re NBI, Inc.,* 129 B.R. 212 [Bankr.D.Colo.1991]; *In re Hathaway Ranch Partnership,* 116 B.R. 208, 216–218 [Bankr.C.D.Cal.1990] ). Indeed, the bankruptcy court noted this doctrinal trend and cited several other cases which support this proposition. (R., Doc. 211 [Krieger's Order at 5 (citing, *inter alia, In re North Bay Tractor, Inc.,* 191 B.R. 186, 187 [Bankr.N.D.Cal.1996]; *In re Dees Logging, Inc.,* 158 B.R. 302, 306–07 [Bankr.S.D.Ga.1993]; *In re Matthews,* 154 B.R. 673, 676 [Bankr.W.D.Tex.1993]; *In re Viscount Furniture Corp.,* 133 B.R. 360, 365 [Bankr.N.D.Miss.1991]; *In re McDonald Bros. Constr., Inc.,* 114 B.R. 989, 1000–02 [Bankr.N.D.Ill.1990] ) ].)

The validity of prepetition cash retainers to compensate bankruptcy attorneys for their services following a chapter 11 petition is so widely accepted that it is rarely even an issue in bankruptcy cases. For example, in *In re Martin,* while the First Circuit went to extensive lengths to define a "case-specific" inquiry into the viability of an attorney security interest in a debtor's *real property* taken as a prepetition retainer for postpetition work, it mandated no such analysis for the $500 cash general retainer also included in the retainer disclosure. *In re Martin,* 817 F.2d at 181. The *Martin* court even contrasted its more complex factual scenario to that of a hypothetical case where a debtor could furnish a cash payment at the outset and, thus, avoid relying on real property to provide security for bankruptcy counsel. *Id.* Discussing a similar issue in *In re Quincy Air Cargo, Inc.,* 155 B.R. 193, 197 (Bankr. C.D.Ill.1993), a bankruptcy court held that

the bankruptcy professionals' lien on the debtor's vehicles was "legally identical to a cash 'security retainer,'" which would have given the·professionals "a possessory security interest in money" to "secure payment of fees for future services that the professionals [were] expected to render." *Id.*

The Colorado bankruptcy courts have not directly ruled on the validity of prepetition security retainers. In *In re NBI,* 129 B.R. 212, the court made a *per se* determination that "earned retainers" are impermissible under bankruptcy law. *Id.* at 222. Earned retainers, however, differ from security retainers in that "'ownership of the retainer is intended to pass to the attorney at the time of payment, in exchange for the commitment to provide the legal services.'" 1 *Collier on Bankruptcy, supra* ¶ 328.02[1][c][ii] (citations omitted). In contrast, security retainers "do not constitute a present payment for future services, but, rather, remain the property of the estate until the attorney applies charges for services rendered against the retainer." *Id.* The *NBI* court specifically acknowledged that not all retainers are improper. In fact, the opinion states that

> whatever conflict may be inherent in a secured relationship between [the debtor-in-possession] and [its two] counsel incident to the retainers is one the Code recognizes and generally tolerates as an exception in assessing disinterestedness, so long as fully disclosed and subjected to the Court's scrutiny in making such determination. Deposit of the retainers in trust provides a means of balancing the interests of the parties, and further insures the Court's role in that process.

*In re NBI,* 129 B.R. at 224 (citations omitted). Ultimately, then, the *NBI* court's concern was whether a retainer arrangement would evade bankruptcy court scrutiny altogether. Rather than precluding counsel from making any special claim on the retained funds, the *NBI* court merely ordered that the funds which the debtor paid were the property of the estate, a point conceded by all parties in the instant case. The *NBI* court further held:

> [The funds] must be held by counsel in trust. Counsel may draw against these trust funds in payment of fees and costs for post[]petition legal services and related expenses incurred only in compliance with applicable provisions of the [] Code and Rules and as otherwise specifically authorized by this Court.

*Id.* at 225–26. Essentially, this is the posture of the case between WC & N and the trustee, except that the bankruptcy court has already deemed WC & N's particular expenditures for services rendered "allowable," "reasonable" and "good." (R., Doc. 211 [Krieger's Order at 1, 7].) To permit WC & N to reap the benefit of its prepetition retainer would not, therefore, conflict with past Colorado bankruptcy decisions.

■ The bankruptcy court declines to follow this line of precedent primarily because it finds that an attorney cannot simultaneously hold a prepetition security interest and remain disinterested, in accordance with the 11 U.S.C.A. §§ 327(a) and 328(c). (*See* R., Doc. 211 [Krieger's Order at 8–9].) According to the bankruptcy court's opinion, then, an attorney who holds a debtor's cash after compensable work has been performed cannot be the beneficiary of an automatically arising lien without violating the terms of the Code. I disagree. As the Colorado bankruptcy court in *NBI* suggested above, counsel's security interest in a retainer is a conflict which "the Code recognizes and generally tolerates as an exception in assessing disinterestedness, so long as fully disclosed and subjected to the Court's scrutiny in making such determination." *In re NBI.,* 129 B.R. at 224. In this case, it is undisputed that WC & N's interest was disclosed to the bankruptcy court at the time the petition was filed and that the bankruptcy court ultimately had the opportunity to evaluate WC & N's services. *Collier,* too, supports a finding that "[t]he professional's status as a secured creditor by virtue of the retainer does not disqualify

**120**

the professional from being retained by the estate as required by section 327 of the Code." 1 *Collier on Bankruptcy, supra* ¶ 328.02[1][c][iii].

The First Circuit also noted the conflict which section 327(c) engenders insofar as it appears to forbid the employment of any attorney who may be considered a "creditor." The First Circuit, however, refused to endorse such a "literalistic reading," calling it "grossly overbroad." Specifically, that court stated:

> After all, any attorney who may be retained or appointed to render professional services to a debtor[-]in[-]possession becomes a creditor of the estate just as soon as any compensable time is spent on account. Thus, to interpret the law in such an inelastic way would virtually eliminate any possibility of legal assistance for a debtor[-]in[-]possession, except under a cash-and-carry arrangement or on a pro bono basis. It stands to reason that the statutory mosaic must, at the least, be read to exclude as a "creditor" a lawyer, not previously owed back fees or other indebtedness, who is authorized by the court to represent a debtor in connection with reorganization proceedings—notwithstanding that the lawyer will almost instantaneously become a creditor of the estate with regard to the charges endemic to current and future representation.

*In re Martin,* 817 F.2d at 180 (footnote omitted). I am persuaded by the logic which the *Martin* court invokes. Accordingly, there is no call to find WC & N anything but "disinterested," not only at the point of the debtor's chapter 11 application (a point conceded by both parties and the bankruptcy court) but also thereafter, despite the existence of the retainer.

In sum, I find that WC & N properly accepted a prepetition "security retainer" in cash from the debtor. Having complied with the fee application process, WC & N is now entitled to be paid from the retainer and shall not be required to share the security with other administrative claim-

ants. *See Printing Dimensions,* 153 B.R. at 719 (stating that counsel "will not be required to share a prepetition retainer with other administrative claimants, where either the retainer is treated as security or the retainer is held in trust"); *In re Pannebaker Custom Cabinet Corp.,* 198 B.R. 453, 460 (Bankr.M.D.Pa.1996) (quoting same); *accord Quincy Air Cargo,* 155 B.R. at 197.

### 5. *Conclusion*

Based on the foregoing, it is therefore

ORDERED that:

1. The bankruptcy court's February 25, 1997, order is REVERSED to the extent it found that WC & N holds no lien or equitable interest in the remaining prepetition retainer.

2. This case is hereby REMANDED to the bankruptcy court for further proceedings consistent with this Order and Memorandum of Decision.