**In re Barbara E. HODES, Phillip Hodes, Debtors.**

**Eric C. Rajala, Trustee, Appellant,**

**v.**

**Barbara E. Hodes, et al., Appellees.**

Bankruptcy Nos. 98–20039–7–I–JAR, 98–20040–7–I–JAR.
Civil Action Nos. 99–2536–GTV, 99–2537–GTV.

United States District Court, D. Kansas.

Feb. 13, 2003.

---

Cynthia F. Grimes, Grimes & Rebein, L.C., Lenexa, KS, for Appellees.

Eric C. Rajala, Overland Park, KS, for Appellant.

## MEMORANDUM AND ORDER

VANBEBBER, Chief Judge.

This Memorandum and Order addresses the bankruptcy appeals in Civil Action Numbers 99–2536–GTV and 99–2537–GTV. Appellant, Trustee Eric Rajala, appeals three orders from the United States Bankruptcy Court, dated April 19, 1999, August 18, 1999, and November 5, 1999, regarding the attorney fees of Appellees Stanford Zeldin and Cynthia Grimes, both of whom acted as counsel for Appellees/Debtors Barbara and Phillip Hodes. The court exercises jurisdiction pursuant to 28 U.S.C. § 158(a)(1) and affirms in part, reverses in part, and remands for further proceedings consistent with this opinion.

## I. STANDARD OF REVIEW

In reviewing a decision of the bankruptcy court, the court accepts the bankruptcy court's findings of fact unless clearly erroneous and examines *de novo* the bankruptcy court's conclusions of law. *Robinson v. Tenantry (In re Robinson),* 987 F.2d 665, 667 (10th Cir.1993) (citations omitted). Where, as here, the bankruptcy court's findings of fact are undisputed, the court focuses only on the legal conclusions to be drawn from the facts found. *Inland's Monthly Income Fund, L.P. v. Duckwall–ALCO Stores, Inc. (In re Duckwall–ALCO Stores, Inc.),* 150 B.R. 965, 969 (D.Kan.1993) (citing *Jarboe v. United Bank of Denver, Colo. (In re Golf Course*

*Builders Leasing, Inc.)*, 768 F.2d 1167, 1169 (10th Cir.1985)).

## II. BACKGROUND

The parties do not dispute the findings of fact as set forth in the bankruptcy court's Memorandum Opinion and Order dated April 19, 1999. Those findings are as follows:

The facts are not disputed. On January 6, 1998, involuntary Chapter 7 bankruptcy petitions were filed for Barbara and Phillip Hodes. An Order for Relief was entered in each case on April 16, 1998, and Eric C. Rajala was appointed Chapter 7 Trustee on May 20, 1998. In order to obtain an accounting of the debtors' use of retainers paid to their counsel, the Trustee filed a motion for examination of the debtors' transactions with their two attorneys, Stan Zeldin and Cynthia Grimes. These retainers had been disclosed to petitioning creditors at the debtors' examination held prior to the filing of the involuntary petitions. The retainers were also disclosed to the Chapter 7 Trustee in the debtors' counsel's § 329 *http://www.westlaw.com/Find/Default.wl?rs=1.0vr =2.0DB=1000546DocName=11 US-CAS329FindType=L* statements, as well as in answer to the Statement of Affairs question regarding such payments, and at the debtors' § 341 hearing.

Within the year before the involuntary petitions were filed, Barbara and Phillip Hodes paid a $10,000 retainer to Stan Zeldin. He had represented the Hodeses in connection with trust, probate and estate issues for some length of time; but has also provided services in connection with their bankruptcies as well.[1] As of the October 28, 1998 hearing on the Trustee's motion, Zeldin had billed the debtors a total of $1,461.25 for services rendered and expenses incurred between November 30, 1997 and August 19, 1998. Of this $1,461.25: only $175 was for services rendered after the orders for relief were entered; $280 was for services and expenses incurred during the "gap period" between the date the involuntary petitions were filed and the orders for relief were entered; and $1,206.25 was for services and expenses incurred before the date the involuntary petitions were filed. Zeldin had been paid all but $175, leaving a credit balance of $8,713.75 of the retainer in Zeldin's possession as of October 28, 1998.

The Hodeses met with their bankruptcy counsel, Cynthia Grimes, for the first time on November 13, 1997. This meeting occurred shortly after a jury had rendered a verdict against the Hodeses and awarded damages of $4 million. A judgment was entered against the Hodeses and other defendants, for the $4 million plus more than $500,000 in attorney fees. This judgment was the culmination of five years of litigation arising out of a contract to sell a business to the petitioning creditors, and is on appeal to the Kansas Court of Appeals for the second time in the history of the case.

Over the next several weeks the Hodeses liquidated their portfolio of non-exempt securities and made several transfers of the proceeds, including paying

---

1. Zeldin's billing statements indicate that he was billing for services in connection with certain bankruptcy issues. Yet, in the debtors' supplemental brief, which was signed by Cynthia Grimes only, over signature blocks for both Grimes and Zeldin, Grimes writes "This counsel also questions whether Mr. Zeldin's prepetition fees would be required to be itemized or subject to § 329, since his services were not for 'representing a debtor in a case under this title, or in connection with such case ... (citation omitted)'."

$225,000 to a home builder to construct an addition to their home.[2]

According to Grimes' time and billing records, the Hodeses paid her a total of $40,000 on November 21, 1997, and another $11,000 on December 23, 1997, for a total retainer of $51,000. The retainer is the subject of a written fee agreement in which Grimes agrees to charge at her normal hourly rate of $150 plus out of pocket expenses such as filing fees, deposition costs and express mail, but excluding expenses for items such as ordinary facsimiles, long distance telephone charges or photocopying expenses.

A review of Grimes' time and billing statements and the Trustee's summary of these records reveals that as of the hearing on October 28, 1998, Grimes had drawn down $30,226.46 of the retainer, and had in her possession the $20,773.54 balance of the retainer. Grimes has not applied for this Courts's [sic] approval of the $30,226.46 in fees paid out of the retainer. In addition, during the involuntary gap period, the debtors paid Grimes a total of $10,385.45 from other funds.

Grimes' time and billing statements further reveal that as of October 5, 1998, she had billed the debtors a total of $30,477.13, of which $16,094.05 was for services from November 13, 1997 until April 16, 1998, and $14,383.13 was for services rendered after the entry of the orders for relief on April 16. There is no dispute that Grimes gave the requisite notice to have a retaining lien.

*In re Hodes,* Nos. 98–20039–7, 98–20040–7, 1999 WL 236183, at *1–2 (Bankr.D.Kan. Apr.19, 1999).

In its April 19, 1999 Memorandum Opinion and Order, the bankruptcy court grant-

ed in part Appellant's motion to examine the transactions between Appellees/Debtors and Appellees Zeldin and Grimes. The bankruptcy court concluded that: (1) the retainers paid to Appellees Zeldin and Grimes became the property of the Appellees/Debtors' estates upon the filing of the involuntary bankruptcy petitions; (2) Appellees Zeldin and Grimes could be compensated out of the property of the estate, including the retainers, but only after application to and approval by the bankruptcy court under 11 U.S.C. §§ 329 and 330; (3) the statutory retaining lien provided by K.S.A. § 7–108 did not bestow upon Appellees Zeldin and Grimes the right to use funds from the retainers without prior court approval under §§ 329 and 330; (4) the fees and expenses charged by Appellees Zeldin and Grimes within one year prior to the filing of the involuntary petitions and during the gap period between the filing of the petitions and the entry of the orders for relief were subject to review and disgorgement under the standard of whether they were "excessive" within the meaning of § 329; and (5) the fees and expenses charged by Appellees Zeldin and Grimes after the entry of the orders for relief could be paid only to the extent that the services rendered benefitted the Appellees/Debtors' estates or were necessary to the administration of their cases as provided under § 330. *Id.* at *2–6.

Applying its conclusions to the facts of the case, the bankruptcy court approved all but $280.00 of Appellee Zeldin's fees and expenses, but ordered him to disgorge the $8,818.75 credit balance remaining in his retainer. *Id.* at *6–7. The bankruptcy court ordered Appellee Grimes to disgorge $9,070.36 of fees and expenses for work she performed after the orders for relief

---

**2.** After entry of the order for relief, objections were filed to the debtors' homestead exemption, and complaints to deny discharge were

filed in both cases, alleging that the Hodeses' pre-bankruptcy asset transfers were in fraud of creditors.

were entered because the work provided no benefit to Appellees/Debtors' estates within the meaning of § 330. *Id.* at *7–8. The court permitted Appellee Grimes to retain the $20,773.54 credit balance remaining in her retainer because she was actively representing Appellees/Debtors in the bankruptcy proceeding and might eventually seek approval from the bankruptcy court for payment of some or all of those funds. *Id.* at *8.

Appellees moved for the court to reconsider its April 19, 1999 order, and on August 18, 1999, the bankruptcy court issued a second Memorandum Opinion and Order. *In re Hodes*, 239 B.R. 239 (Bankr.D.Kan. 1999). In the August 18, 1999 order, the bankruptcy court reaffirmed its holding that the fee retainers became part of Appellees/Debtors' estates upon the filing of the involuntary petitions, but reconsidered its previous ruling regarding the effect that the statutory retaining lien provided by K.S.A. § 7–108 had upon the payment of fees and expenses to Appellees Zeldin and Grimes. The bankruptcy court concluded that the retaining liens attached to the entire balance of the retainers paid to Appellees Zeldin and Grimes, not just to the fees and expenses drawn from the retainers as they were earned. *Id.* at 243–44. Because the entirety of the retainers were encumbered by the liens, the bankruptcy court concluded that its review of any postpetition fees and expenses, including fees and expenses for services rendered after the orders for relief were entered, must be made under the "excessive" standard of § 329, as opposed to the "benefit to the estate" standard of § 330. *Id.* at 244–46. In reaching this conclusion, the bankruptcy court explained that § 330 was intended to provide a balance between administrative claimants, such as trustees, examiners, or other professional persons, and unsecured creditors—all of whom are competing for the same pool of unencum-

bered assets. *Id.* at 245. The bankruptcy court reasoned that because Appellees Zeldin and Grimes had valid liens on their retainers, thus encumbering those assets, they were not competing for the same pool of unencumbered assets as administrative claimants and unsecured creditors and were therefore not covered by § 330. *Id.* at 245–46. The bankruptcy court thus limited its review of Appellees Zeldin's and Grimes's postpetition fees and expenses to whether they were excessive under § 329, and determined that they were not. *Id.* at 246. Appellee Zeldin was permitted to draw down the previously disallowed $280.00, and Appellee Grimes was allowed to draw down the previously disgorged $9,070.36. *Id.* The bankruptcy court also ordered Appellee Zeldin to show cause why the $8,538.75 credit balance then remaining in his retainer should not be returned to the estates as funds that would not be expended by him in representation of Appellees/Debtors. *Id.*

Following entry of the August 18, 1999 order, Appellee Zeldin responded to the bankruptcy court's show cause order and filed a supplemental fee statement totaling $5,625.00. Appellee Grimes also filed a supplemental fee statement totaling $20,572.00, leaving a net credit balance from her original retainer of $201.54 as of July 22, 1999. On November 5, 1999, the bankruptcy court issued an order approving all fees claimed by Appellees Zeldin and Grimes as reasonable pursuant to § 329. The bankruptcy court also declined to force Appellee Zeldin to disgorge the remaining credit balance in his retainer.

### III. DISCUSSION

#### A. Appellees' Arguments Regarding Validity of Appeals

As an initial matter, the court addresses three arguments raised in Appellees' re-

sponse brief which challenge the court's ability to hear these appeals. For the following reasons, the court deems the arguments to be without merit.

■ First, Appellees intimate that Appellant waived his right to argue that Appellees Zeldin and Grimes should disgorge fees and expenses under § 330. Although their argument is not entirely clear, it appears that they base their contention on the fact that Appellant's original motion for examination of debtors' transactions with their attorneys only sought examination and possible disgorgement of fees and expenses under the "excessive" standard of § 329, not under the "benefit to the estate" standard of § 330. Appellees appear to maintain that because Appellant did not ultimately challenge the fees and expenses of Appellees Zeldin and Grimes as excessive, the issue raised by Appellant's original motion was resolved and the question of whether the fees and expenses satisfied the standard of § 330 was not properly before the bankruptcy court. The record reveals, however, that once Appellees Zeldin and Grimes produced their billing statements to Appellant, he specifically argued at a hearing held before the bankruptcy court on October 28, 1998, that fees for services rendered by Appellees Zeldin and Grimes after the orders for relief were entered should be disgorged under § 330. Because Appellant specifically raised this argument to the bankruptcy court, the court will consider it on appeal.

■ Second, Appellees contend that Appellant's failure to seek a stay pending appeal of the bankruptcy court's orders mooted these appeals because Appellees Zeldin and Grimes have already applied all fees and expenses against their retainers in accordance with the bankruptcy court's orders. Appellees do not point the court to any specific authority supporting their argument, and the court is unable to independently find any. As noted by Appellant, the bankruptcy code contains only two provisions by which an appellant's right to recovery may be expressly affected for failing to seek a stay pending appeal. See 11 U.S.C. § 363(m) ("The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, . . . unless such authorization and such sale or lease were stayed pending appeal."); *Id.* § 364(e) (same with respect to appeals from orders creating liens with preferential position or authorizing debt against the bankruptcy estate under 11 U.S.C. § 364(d)). Neither provision applies here. Otherwise, a case may become moot only when it becomes "impossible for the court to grant 'any effectual relief whatever' to a prevailing party." *Church of Scientology v. United States,* 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (quoting *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895)). Here, the court has the ability to reverse the bankruptcy court's decision and order Appellees Zeldin and Grimes to disgorge certain fees and expenses that they were previously permitted to draw down from their retainers. Such an order would provide effectual relief to Appellant; therefore, these appeals are not moot on that basis.

Finally, Appellees note that these appeals would also be moot if the Kansas Supreme Court overturns the underlying $4 million state court judgment against Appellees/Debtors. The Kansas Supreme Court affirmed the state court judgment on March 10, 2000. The instant appeals

are therefore not moot based on that argument either.

### B. Appellant's Contentions of Error

Appellant advances four contentions of error. First, Appellant contends that the bankruptcy court erred in each of its three orders by allowing any compensation for postpetition services to be paid to Appellees Zeldin and Grimes from the property of the estate because § 330 no longer allows any such compensation to be paid to a debtor's attorney. In the alternative, Appellant submits that if § 330 is generally interpreted to allow compensation to a debtor's counsel from the property of the estate, the bankruptcy court erred in its orders of August 18, 1999 and November 5, 1999 by allowing compensation for services rendered after the orders for relief were entered because Appellees Zeldin and Grimes did not satisfy the mandate of § 330(a)(4)(A) that their services benefit the estates or be necessary to the administration of Appellees/Debtors' cases. Third, Appellant maintains that the bankruptcy court erred in its order dated August 18, 1999 by ruling that Appellees Zeldin's and Grimes's retaining liens under K.S.A. § 7–108 encumbered all of the equity in the retainer accounts and thus secured payment of Appellees/Debtors' attorney fees for services rendered after the orders for relief were entered. Finally, Appellant argues that the bankruptcy court erred in reconsidering its April 19, 1999 order based on the reversal of *In re Printcrafters, Inc.,* 208 B.R. 968 (Bankr. D.Colo.1997), rev'd, *Weinman, Cohen & Niebrugge, P.C. v. Peters (In re Printcrafters, Inc.),* 233 B.R. 113 (D.Colo.1999).

#### 1. Decision to Grant Motion to Reconsider

■ Because it concerns which of the bankruptcy court's orders are properly at issue here, the court begins by considering Appellant's final argument that the bank-

ruptcy court erred in reconsidering its April 19, 1999 order. "Discretionary decisions, such as the decision to grant or deny a motion to reconsider ... are committed to the sound discretion of the bankruptcy court, and are therefore only reversible for the abuse of that discretion." *Sunwest Hotel Corp. v. Bd. of County Comm'rs of Reno County (In re Sunwest Hotel Corp.),* Nos. 92–40079–11, 96–4187–SAC, 92–7100, 1998 WL 982905, at *5 (D.Kan. Sept.29, 1998) (citations omitted). The court will not disturb a bankruptcy court's decision under this standard unless it has "a definite and firm conviction that the bankruptcy court made a clear error of judgment or exceeded the bounds of permissible choice under the circumstances." *United States v. Berger (In re Tanaka Bros. Farms, Inc.),* 36 F.3d 996, 998 (10th Cir.1994) (citation omitted) (applying abuse of discretion standard to bankruptcy court's decision to disallow an amended proof of claim).

■ Appellees timely moved the bankruptcy court to reconsider its April 19, 1999 order pursuant to Fed. R. Bankr.P. 9023, which incorporates Fed.R.Civ.P. 59. "Grounds for warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir.2000) (citation omitted). In this case, the bankruptcy court did not specifically pinpoint which one of the three grounds prompted it to reconsider its previous order. It merely stated in its August 18, 1999 order that "[b]ecause this Court did not fully consider the effect of the retaining lien held by the Debtors' counsel, the Court will now reexamine the effect of an attorney retaining lien on an advance fee payment retainer taken prepetition." *In re*

*Hodes,* 239 B.R. at 243. Appellant places great emphasis on the fact that, as part of its re-analysis of the retaining lien issue, the bankruptcy court also acknowledged that a case upon which it had relied in its April 19, 1999 order, *In re Printcrafters, Inc.,* 208 B.R. 968 (Bankr.D.Colo.1997), had been reversed by the *District of Colorado* in *Weinman, Cohen & Niebrugge, P.C. v. Peters (In re Printcrafters, Inc.),* 233 B.R. 113 (D.Colo.1999). According to Appellant, the bankruptcy court's decision to reconsider was in error because Printcrafters was non-binding precedent and was factually distinguishable from this case. However, a review of the bankruptcy court's August 18, 1999 order indicates that the bankruptcy court, as it stated, decided to reconsider its April 19, 1999 order because it believed that it had not thoroughly considered the retaining lien issue; it never stated that it decided to reconsider based solely on the reversal of Printcrafters. The court believes that this decision properly falls under the ground of granting a motion to reconsider to correct clear error or prevent manifest injustice. Therefore, the bankruptcy court did not abuse its discretion in reconsidering the April 19, 1999 order.

### 2. Applicability of § 330 to Debtors' Attorneys

Appellant's first argument on appeal is that the bankruptcy court erred in each of its three orders by allowing compensation to be paid to Appellees Zeldin and Grimes from the property of the estate because § 330 no longer allows any such compensation to be paid to a debtor's attorney. The court disagrees.

The threshold question on this issue is whether the advance fee payment retainers held by Appellees Zeldin and Grimes constituted "property of the estates" in the first place.[3] The bankruptcy court concluded in both its April 19, 1999 and August 18, 1999 orders that, under the ethical rules of Kansas which require that such retainers be kept in a client's trust account as opposed to the attorney's operating account, Appellees/Debtors retained an interest in the money, and the retainers therefore became property of the estates at the time the involuntary petitions were filed. Although Appellees state that they believe the bankruptcy court's ruling was in error, they failed to file a notice of cross-appeal on the issue. Because "[t]he timely filing of a notice of cross-appeal is jurisdictional and cannot be waived," the court cannot consider Appellees' argument on appeal. *United States v. Hudson Oil Co. (In re Hudson Oil Co.),* 210 B.R. 380, 383–84 (D.Kan.1997). The court will therefore consider Appellees Zeldin's and Grimes's retainers to have been property of the estates at the time the involuntary petitions were filed.[4]

3. "Property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

4. The court notes that though the retainers became property of the estates at the time the involuntary bankruptcy petitions were filed, the relevant date of focus here is the date that the orders for relief were entered. In involuntary bankruptcy cases such as these, 11 U.S.C. § 549(b) prohibits a trustee from avoiding transfers of property of the estate in exchange for value, including services, received by the debtor during the "involuntary gap period" between the commencement of the case and the entry of the order for relief. Given this prohibition, Appellant focuses only on amounts drawn down from the retainers for services rendered after the entry of the orders for relief on April 16, 1998. He does not challenge any amounts paid to Appellees Zeldin and Grimes from the retainers for services rendered prior to the filing of the involuntary petitions or during the involuntary gap period.

**14**

Section 330 provides for compensation of certain officers from the property of the estate for services rendered that were reasonably likely to benefit the estate or were necessary to the administration of the case. Prior to the enactment of the Bankruptcy Reform Act of 1994, § 330 provided:

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, *or to the debtor's attorney*—

(1) reasonable compensation for actual, necessary, services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by any such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a) (1988) (emphasis added). Since the institution of the Act, however, § 330 provides:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary, services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a) (2000).

 Appellant contends that the removal of the words "or to the debtor's attorney" at the conclusion of subpart (a)(1) of the post-Act version of § 330 signals an intent by Congress to exclude debtors' attorneys from the list of officials who may be compensated from property of the estate. The courts are currently split on this issue. One group of courts has concluded that the language of the post-Act § 330 is clear and unambiguous on its face, and that compensation to debtors' attorneys from the property of the estate is therefore no longer permissible. See, e.g., *United States Trustee v. Equip Servs., Inc. (In re Equip. Servs., Inc.)*, 290 F.3d 739, 745–46 (4th Cir.2002); *Inglesby, Falligant, Horne, Courington & Nash, P.C. v. Moore (In re Am. Steel Prod., Inc.)*, 197 F.3d 1354, 1355–56 (11th Cir. 1999); *Andrews & Kurth L.L.P. v. Family Snacks, Inc. (In re Pro-Snax Distribs., Inc.)*, 157 F.3d 414, 424–26 (5th Cir.1998). The opposing group of courts, including the bankruptcy court below, have adjudged § 330 ambiguous and looked beyond the plain language of the statute to hold that the deletion of debtors' attorneys from § 330 was merely a "scrivener's error" that should not disqualify those attorneys from continued qualification for compensation under the statute. See, e.g., *In re Top Grade Sausage, Inc.*, 227 F.3d 123, 130 (3d Cir.2000); *United States Trustee v. Garvey, Schubert & Barer (In re Century Cleaning Servs., Inc.)*, 195 F.3d 1053, 1056–61 (9th Cir.1999); *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 72 (2d Cir.1996).

 The court is persuaded by the rationale espoused by the scrivener's error courts. Two major grammatical errors in § 330(a) create an ambiguity that requires

the court to look beyond the statute's plain language. First, although the words "or to the debtor's attorney" were deleted from subpart (a)(1) of the post-Act § 330, the reference to "attorney" was nonetheless retained in subpart (a)(1)(A). Second, Congress failed to insert the conjunction "or" immediately before the words "a professional person" in subpart (a)(1) despite the fact that the deletion of the words "or to the debtor's attorney" made "a professional person" the last category on the list of officers entitled to compensation. Given this ambiguity, the court looks to the legislative history of the Bankruptcy Reform Act to determine whether Congress displayed a clear intent to exclude debtors' attorneys from the list of officers entitled to compensation. However, as noted by the Third and Ninth Circuits, there is no such clear intent demonstrated in the legislative history. *In re Top Grade Sausage, Inc.*, 227 F.3d at 130; *In re Century Cleaning Servs., Inc.*, 195 F.3d at 1058–60; see also *Dewsnup v. Timm*, 502 U.S. 410, 419–20, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (citations omitted) ("[T]his Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history."). Finally, for public policy reasons, the court sees no valid reason for exclusion of debtors' attorneys from § 330 if they, like the other officers listed in the section, render services that benefit the estate or are necessary to the administration of the case. Such exclusion would only serve to deter attorneys from accepting bankruptcy cases for fear that they may never recover their postpetition fees.

In sum, the court finds no error in the bankruptcy court's conclusion in its April 19, 1999 order that omission of debtors'

attorneys from § 330 was inadvertent. The court therefore follows the Second, Third, and Ninth Circuits and holds that a debtor's attorney remains entitled to compensation from property of the estate under § 330 so long as the attorney can demonstrate that the services rendered benefitted the estate or were necessary to the administration of the case.

### 3. Effect of Retaining Lien on Applicability of § 330

Before moving to the issue of whether the services rendered by Appellees Zeldin and Grimes benefitted the estates or were necessary to the administration of the cases, the court addresses the issue raised in Appellant's third contention of error. The bankruptcy court concluded in its August 18, 1999 order that, despite the fact that the credit balances remaining in Appellees Zeldin's and Grimes's retainers were property of the estates as of the date the orders for relief were entered, the liens on the retainers superseded the interests of the estates and thus effectively removed Appellees Zeldin and Grimes from the purview of § 330. Appellant contends that the bankruptcy court's ruling was in error. The court agrees.

The nature and extent of Appellees Zeldin's and Grimes's rights in the retainers is determined by Kansas state law. See *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."). K.S.A. § 7-108, Kansas's attorney's lien statute provides:

An attorney has a lien for a general balance of compensation upon any papers of his or her client which have come into the attorney's possession in the course of his or her professional employment, upon money in the attorney's

hands belonging to the client, and upon money due to the client and in the hands of the adverse party, in any matter, action or proceeding in which the attorney was employed, from the time of giving notice of the lien to the party; such notice must be in writing, and may be served in the same manner as a summons, and upon any person, officer or agent upon whom a summons under the laws of this state may be served, and may also be served upon a regularly employed salaried attorney of the party. There is no dispute in this case that Appellees Zeldin and Grimes completed the necessary steps to have valid retaining liens on the retainers paid to them by Appellees/Debtors.

In its August 18, 1999 order, the bankruptcy court looked to the District of Colorado's decision in *In re Printcrafters*, 233 B.R. 113 (D.Colo.1999), to conclude that the liens held by Appellees Zeldin and Grimes attached to the entire retainers regardless of whether the fees had yet been earned. According to the bankruptcy court, the liens on the retainers superseded the interests of the estates in the retainers and enabled Appellees Zeldin and Grimes to draw down the retainers without complying with § 330. The court disagrees with the bankruptcy court's rationale and conclusion.

In Printcrafters, attorneys for a Chapter 11 debtor whose case had been converted to a Chapter 7 proceeding, sought fees from a prepetition retainer for services rendered to the debtor prior to the conversion of the case to Chapter 7. 233 B.R. at 115. The bankruptcy court had previously approved the appointment of the attorneys as debtor's counsel in the Chapter 11 proceeding, and had also deemed the applied-for expenditures "allowable," "reasonable," and "good." *Id.* at 115, 119. The trustee objected to the fees based on the argument

that, as of the date the Chapter 11 petition was filed and the retainer became property of the estate, debtor's attorneys could have no lien on fees for services yet to be performed. *Id.* at 117. The Colorado district court disagreed. The court began by examining the Colorado attorney's lien statute, Colo.Rev.Stat. § 12–5–119, which states that "[a]ll attorneys—and counselors-at-law shall have a lien on any money . . . in their hands . . . for any fees or balance of fees due or to become due from any client." *Id.* Focusing on the language of the statute stating that the lien applies to "any fees or balance of fees due or to become due from any client," the court concluded that application of the lien was not limited solely to those fees earned prior to the filing of the petition. *Id.* at 118. Ultimately, the Printcrafters court held:

> In sum, I find that [debtor's attorneys] properly accepted a prepetition "security retainer" in cash from the debtor. Having complied with the fee application process, [debtor's attorneys are] now entitled to be paid from the retainer and shall not be required to share the security with other administrative claimants.

*Id.* at 120 (citations omitted).

■ The court believes that the bankruptcy court took its interpretation of Printcrafters too far. The Printcrafters court never held that a debtor's attorney may avoid scrutiny under § 330 altogether simply because he or she has a retaining lien on a prepetition retainer paid by the debtor. In fact, the Printcrafters court specifically indicated that such evasion would be contrary to previous Colorado bankruptcy court decisions. *Id.* at 119 (citing *In re NBI, Inc.*, 129 B.R. 212 (Bankr.D.Colo.1991)). This court views Printcrafters as standing for the proposition that a debtor's attorney will not be precluded from asserting a lien on post-

petition fees to be drawn out of a pre-petition retainer, so long as the fees meet the test of § 330. In Printcrafters, the debtor's attorneys met that test and the district court properly concluded that the attorney's lien permitted the attorneys to draw those fees out of the retainer.

■■■ The court believes that the same result is appropriate here. Although the Kansas attorney's lien statute is worded slightly differently than the Colorado statute, the court interprets it as having the same effect. So long as an attorney maintains an interest in a retainer paid to him by his or her client, the Kansas attorney's lien statute permits the attorney to assert a lien on that retainer for any fees earned by the attorney. The unique difficulty arising in the bankruptcy context is answering the question of when the fees are actually "earned." When a credit balance on a retainer becomes property of the estate, as it did in both cases here by the time the orders for relief were entered, any fees charged for services rendered after that time become subject to scrutiny under § 330. Only after the bankruptcy court approves such fees under § 330 are they actually "earned." When the fees are earned, the liens then operate to place the debtor's attorney's interest in those assets above those of competing creditors or administrative claimants.

In this case, the majority of fees charged for services rendered after the entry of the orders for relief were not actually earned because the bankruptcy court never approved such fees under § 330. Accordingly, the liens on the re-tainers did not operate to place Appellees Zeldin's and Grimes's interests in those assets above those of other creditors and administrative claimants. For that reason, the bankruptcy court's August 18, 1999 order is reversed to the extent that it permitted Appellees Zeldin and Grimes to draw down fees from their retainers after the orders for relief were entered subject to no scrutiny under § 330.

4. Review of Fees Under § 330

■■■ The court now moves to the question of whether any of the services rendered by Appellees Zeldin and Grimes after the orders for relief were entered qualify for compensation under § 330.[5] The bankruptcy court reviewed a portion of Appellees Zeldin's and Grimes's fees under § 330 in its April 19, 1999 order; however, any fees subsequent to those addressed in that order have not been reviewed under that section.

*a. Appellee Zeldin*

In its April 19, 1999 order, the bankruptcy court examined the fees and expenses charged by Appellee Zeldin as of the hearing before the bankruptcy court on October 28, 1998. As of that date, Appellee Zeldin had billed Appellees/Debtors a total of $1,461.25 for services rendered and expenses incurred. Of the $1,461.25, $1,006.25 was for fees and expenses incurred prior to the filing of the involuntary petitions,[6] $280.00 was for fees and expenses incurred during the "gap period" between the filing of the petitions and the entry of the orders for relief, and $175.00 was for fees and expenses incurred

---

5. As noted, Appellant does not challenge any fees for services rendered by Appellees Zeldin and Grimes prior to the entry of the orders for relief in this case. Similarly, Appellant does not contend that any of the fees charged by Appellees Zeldin and Grimes are "excessive" in contravention of § 329.

6. The bankruptcy court appears to have incorrectly stated in the findings of fact of its April 19, 1999 order that the amount of fees and expenses charged by Appellee Zeldin prior to the filing of the involuntary petitions was $1,206.25.

after the entry of the orders for relief. The bankruptcy court approved all of Appellee Zeldin's fees as charged, with the exception of the $280.00 charged for services rendered during the gap period. The bankruptcy court also ordered Appellee Zeldin to disgorge the $8,818.75 credit balance remaining in his retainer. Appellant requests that the court reinstate these rulings by the bankruptcy court.

The court begins by addressing the portion of the bankruptcy court's order requiring Appellee Zeldin to disgorge the $280.00 drawn down from the retainer for services rendered during the gap period. Although the bankruptcy court indicated that fees for work performed during this period would be evaluated only under the "excessive" standard of § 329, it disapproved of the fee, in part, because it was for a service of personal benefit to the debtors and not of benefit to the estates in contravention of § 330. As noted, Appellant does not contend on appeal that fees for services rendered during the gap period should be evaluated under § 330, and from a review of the record below, it does not appear that Appellant challenged the $280.00 fee at the bankruptcy level. Given this, the court concludes that the bankruptcy court's order for Appellee Zeldin to disgorge the $280.00 was clearly erroneous. Appellant does not otherwise challenge the $1,006.25 pre-petition or the $175.00 post-order-for-relief fees permitted by the court in the April 19, 1999 order. Therefore, the court holds that Appellee Zeldin may properly draw down the entire $1,461.25 in fees and expenses requested as of the October 28, 1998 hearing.

Although the bankruptcy court's April 19, 1999 order also required Appellee Zeldin to disgorge the credit balance remaining in his retainer at that time, the bankruptcy court reconsidered this holding in its subsequent orders and permitted him to retain the credit balance. The court believes that permitting Appellee Zeldin to retain the credit balance remaining in his retainer was appropriate. Appellee Zeldin subsequently charged Appellees/Debtors for additional services rendered, all of which were approved by the bankruptcy court as "not excessive" under § 329 in its November 5, 1999 order. Because the bankruptcy court did not also review those additional fees and expenses under § 330 (the "benefit to the estate" standard), the court remands the case for such a review in accordance with this opinion.

### b. Appellee Grimes

The bankruptcy court's April 19, 1999 order also addressed the fees and expenses charged by Appellee Grimes as of the October 28, 1998 hearing. As of that date, Appellee Grimes had billed Appellees/Debtors a total of $30,477.18 for services rendered and expenses incurred.[7] Of the $30,477.18, $16,094.05 was for fees and expenses incurred before the orders for relief were entered, while $14,383.13 was for fees and expenses incurred after the orders for relief were entered. Although Appellant conceded that over $5,000.00 of Appellee Grimes's $14,383.13 post-order-for-relief fees and expenses satisfied § 330's "benefit to the estate" test, he requested disgorgement of the remaining $9,070.36 in fees and expenses.[8] The

---

7. The bankruptcy court appears to have incorrectly stated in the findings of fact of its April 19, 1999 order that the amount of fees and expenses charged by Appellee Grimes as of the October 28, 1998 hearing was $30,477.13.

8. Appellant also argued below, and continues to argue on appeal, that Appellee Grimes should disgorge the entire $14,383.13 in post-order-for-relief fees and expenses because the 1994 deletion of the words "or to the debtor's attorney" from § 330 indicates an intent by Congress to prohibit such compensation from

bankruptcy court agreed, finding that the services rendered for the $9,070.36 in fees and expenses did not satisfy the requirements of § 330. Because Appellee Grimes was actively representing Appellees/Debtors in the proceedings, the bankruptcy court permitted her to retain the credit balance remaining in her retainer. Appellant requests that the court reinstate the bankruptcy court's ruling requiring disgorgement of the $9,070.36, but reverse its ruling regarding the disgorgement of the credit balance remaining in the retainer.

The court finds no error in the bankruptcy court's rulings. Appellee Grimes is therefore ordered to disgorge the $9,070.36 in fees and expenses that the bankruptcy court found did not satisfy the requirements of § 330. Like Appellee Zeldin, Appellee Grimes also subsequently charged Appellees/Debtors for additional services rendered after the April 19, 1999 order, all of which were approved by the bankruptcy court as "not excessive" under

§ 329 in its November 5, 1999 order. Because the bankruptcy court did not review those additional fees and expenses under § 330, the court remands the case for such a review in accordance with this opinion.

IT IS, THEREFORE, BY THE COURT ORDERED that the bankruptcy court is affirmed in part, reversed in part, and the cases are remanded to the bankruptcy court for further proceedings consistent with this opinion.

Cases 99–2536–GTV and 99–2537–GTV are therefore closed.

Copies of this order shall be transmitted to counsel of record for the parties.

**IT IS SO ORDERED.**

---

the property of the estate. As discussed in Section III.B.2 above, Appellant's argument is without merit. Therefore, the court only considers Appellant's alternative argument that $9,070.90 of Appellee Grimes's fees failed to

satisfy the "benefit to the estate" test of § 330.